EX PARTE THOMAS B. PARKER AND THOMAS SAWYER.

**False Pretense:** JURISDICTION OF POLICE COURT. P. and S. resided and did business in Saline county. The traveling salesman of merchants in Douglas county sold them a bill of goods. The order of purchase was verbal. There was no written contract signed by P. and S. The evidence showed delivery of the goods to a railroad for conveyance to P. and S., but did not show that they accepted or received the same, or paid any part of the purchase money. They were arrested upon a warrant issued by a police court in Douglas county, under a complaint of obtaining property under "false pretenses." On *habeas corpus, held*, 1. That the contract of purchase being void under the statute of frauds, a delivery of the goods to the railroad was not a delivery to P. and S. 2. That under the evidence the police court of Douglas county had no jurisdiction of the alleged offense.

ORIGINAL application for writ of *habeas corpus*.

*Hastings & McGintie,* and *E. F. Smythe,* for relator.

*Groff & Montgomery,* and *John C. Cowin,* for respondent.

COBB, J.

This case was submitted to the court chiefly upon the question of jurisdiction in the committing magistrate. The case was heard upon the evidence taken before him, no application for additional testimony being made by either party, and the magistrate having returned and certified all the testimony taken before him.

Does this testimony establish *prima facie* the guilt of the petitioners, or either of them, of the offense charged within the county of Douglas?

The offense with which the petitioners are charged is set out in the statute in the following words:

"If any person, by false pretense or pretenses, shall obtain from any other person any money, goods, merchandise, or effects whatever, with intent to cheat and defraud such persons of the same," etc.    1875, 9.

The complaint charges that the petitioners "on the 19th day of March, A.D. 1880, in the county of Douglas and within the city limits of the city of Omaha, Nebraska, unlawfully, wilfully, and feloniously, did falsely pretend to the complainant, Freeman P. Keykendall, who is a member of a firm doing business in the city of Omaha, under the firm name of Reed, Jones & Co., * * that they, the said T. B. Parker and Thomas Sawyer, were * * the owners and possessors, free from incumbrance, of the following described personal property situate and being in Dorchester, in the county of Saline, in the state of Nebraska, to-wit: Thirty thousand bushels of corn, of the value of six thousand dollars, and the cribs in which said corn was deposited, of the

value of five hundred dollars; and that the said T. B. Parker * * and Thomas Sawyer were the owners, free from incumbrance, of a stock of merchandise in their store in said Dorchester, county and state aforesaid, of the value of four thousand dollars, and that they, the said T. B. Parker and Thomas Sawyer, were worth, jointly and severally, the sum of eighteen thousand dollars over and above all of their joint and several liabilities; with the felonious intent then and there to cheat and defraud the said firm of Reed, Jones & Co., and all the members thereof, and by means of said false pretense and pretenses they, the said T. B. Parker * * and Thomas Sawyer, unlawfully, wilfully, and feloniously, then and there did obtain from the said William P. Reed, Ellis O. Jones, and Freeman P. Keykendall, comprising the firm of Reed, Jones & Co., the following described goods and merchandise, to-wit: * * * of the total value of seven hundred and twenty-eight dollars and seventy-two cents, of the goods, chattels, merchandise, and property of the said William P. Reed, Ellis O. Jones, and Freeman P. Keykendall * * with the felonious intent then and there unlawfully, wilfully, and feloniously to cheat and defraud the said * * Reed, Jones & Co. of the goods, chattels, merchandise, and property aforesaid; whereas, in truth and in fact, the said T. B. Parker * * and Thomas Sawyer, at the time and times aforesaid, did not own said corn, or any part thereof, nor the cribs, or any part thereof, and whereas, in truth and in fact, the said T. B. Parker * * * * and Thomas Sawyer, at the time and times aforesaid, did not have the stock of merchandise, as by them represented, of the value of four thousand dollars, but in truth and in fact the said stock of goods and merchandise was of the value of twenty-five hundred dollars, and no more; and whereas, in truth and

in fact, the said T. B. Parker and Thomas Sawyer are not jointly and severally worth the sum of eighteen thousand dollars over and above their joint and several liabilities, nor of any sum or amount whatever. And the said T. B. Parker  *  *  and Thomas Sawyer, at the time they so falsely pretended, as aforesaid, well knew the said pretense and pretenses to be fraudulent and false," etc.

The testimony is to the effect that on the 14th of January, 1880, William Fisher, the traveling salesman of Reed, Jones & Co., wholesale merchants of Omaha, Douglas county, called at the store of Parker & Sawyer (petitioners), at Dorchester, Saline county. He found Mr. Sawyer in the store, and had a general conversation with him, in which Mr. Sawyer made representations as to the business and means of the firm, which are claimed to have been false and made with intent to defraud, but which it is not deemed necessary to set out at length in this opinion. In the course of the conversation Fisher informed Sawyer that he had samples open at the hotel, and invited him over there. He went, and after examining the samples, gave Fisher an order for goods amounting to over eight hundred dollars. This order was a verbal one, so far as Sawyer or Parker & Sawyer were concerned, was reduced to writing by Fisher, and by him forwarded to the house at Omaha. These goods were not to be actually ready for delivery until the following March. There is no testimony as to anything having been said as to the place of delivery, or the means or line by which the same were to be shipped or delivered. There is testimony as to representations, which are claimed to be false and fraudulent, having been made by the petitioners, or one of them, to Mr. Koch, traveling salesman for another firm, who communicated the same to Reed, Jones & Co.; also of

similar representations made by them to Mr. Montgomery, the attorney of R., J. & Co., who went to Dorchester for the special purpose of ascertaining the financial condition of the petitioners. Upon the return of the latter to Omaha, and his report being made to R., J. & Co., they shipped (March 19), upon the said order forwarded to them by their traveling salesman, Fisher, in the month of January preceding, goods to the amount of $728.72, by the Burlington and Missouri River Railroad in Nebraska, consigned to Parker & Sawyer, Dorchester, Nebraska. There is also testimony tending to prove that the representations made by Sawyer to Fisher at the time of the giving of the order for the goods, as well as those made by him at a subsequent date to Mr. Koch, and those made by both Parker and Sawyer, at a subsequent date, to Mr. Montgomery, were false. Also testimony tending to prove that some time in July, 1880, the petitioners sold out their business at Dorchester, and did not pay their debts.

The primary definition of the word obtain, as given by Webster, is "to get hold of by effort." The section of the statute under which the petitioners were committed is almost a literal copy of the corresponding section of 30 Geo. II, Chap. 24, which has been held to reach almost every species of gross fraud by means of which the unsuspecting and over confident have been cheated out of money or goods. Yet I think that in the very nature of things there is a difference between those frauds which are perpetrated by means of the abuse of the forms of legitimate commercial transactions and those which consist of personations and so-called confidence games and tricks. In either case and by whatever means accomplished, the crime consists in the obtaining of the property—getting hold of the property, that is the *corpus delicti.*

So far as the testimony in this case proves a contract for the purchase and sale of the goods in question, it was a contract within the statute of frauds. The value and price of the goods exceeded fifty dollars. There was no note or memorandum of such contract made in writing and subscribed by the party to be charged thereby, nor did the buyer accept or receive the goods or any part thereof, nor did they pay any part of the purchase money. There is proof that the goods were delivered by Reed, Jones & Co. to the agent of the railroad to be conveyed to the petitioners at Dorchester, and it was urged at the hearing that such delivery was a delivery in legal effect to the petitioners, and so completed and gave locality—venue—to the offense. Such no doubt would be the case had the contract been such as to vest the legal title in the purchasers. But the contract being void within the statute of frauds a delivery to the railroad agent was no delivery to the consignees.

*Calkins et al. v. Hellman*, 47 N. Y., 449, is directly in point. In that case the court say, "No act of the vendor alone in performance of a contract void by the statute of frauds can give validity to such a contract," and again, "where a valid contract of sale is made in writing, a delivery pursuant to such contract at the place agreed upon for delivery, or a shipment of the goods in conformity with the terms of the contract, will pass the title to the vendee without any receipt or acceptance of the goods by him. But if the contract is oral, and no part of the price is paid by the vendee, there must be not only a delivery of the goods by the vendor, but a receipt and acceptance of them by the vendee to pass the title or make the vendee liable for the price."

Now if, waiving the fraud, the facts proved would be insufficient to render the petitioners liable for the price

of the goods, it seems to me quite clear that such facts must be held insufficient when coupled with the alleged false and fraudulent pretenses to establish the charge preferred against them.  It seems almost unnecessary to argue where a thing has not been obtained at all, that it has not been obtained by false pretenses.

Were there proof of the receipt of the goods at Dorchester, and their acceptance at that place by the petitioners, such acceptance would not only have made legal a transaction which up to that point was void under the statute, but would also, such purchase having been effected by means of false pretenses, have given venue to the offense and jurisdiction to try it to the district court of Saline county.

But on the other hand, let us examine the question without reference to the statute, discarding all presumptions and legal conclusions.  Is there any evidence tending to prove that these men obtained the goods in Douglas county?  They indicated the kind and quantity which they wished to buy, and in that manner induced Fisher to order them; which in every other view than that of the statute of frauds, was equivalent to ordering them themselves.  Set in motion by these means the goods may be followed to the freight office of the railroad.  Beyond that there is "no thoroughfare."  Even were we now dealing with presumptions of law it would not be contended that the law raises any presumption that goods shipped by railroad at one point are delivered to a given person at another.  And when it is borne in mind that we are considering a question of crime, that these goods have been set in motion by means of false pretenses, the one hundred miles and more between the railroad freight office at Omaha and the store of the petitioners at Dorchester must be considered a *locus penitentiæ*, within which even the unconscious wheels of commerce might have re-

fused to revolve as accessories to crime, and thus this well laid scheme of fraud fall short of fruition.

No doubt the reason why the state failed to introduce any evidence tending to prove the receipt of the goods at Dorchester or their acceptance by the petitioners, supposing for the sake of the statement that such proof could have been obtained, was that by such evidence it would be established that the goods were obtained by the petitioners at their home at Dorchester and not at the railroad office at Omaha. But in a criminal case where all the presumptions are in favor of the innocence of the accused, it will not do to stop short of proving the body of the crime. It is true that, for all that appears in the proofs, the goods never left the city of Omaha, and it is equally true that, for all that appears in the proofs, the petitioners never obtained the goods, never " got hold of them" either by false pretenses or otherwise, either at one place or the other.

No case being made against the petitioners it follows that they must be discharged.

JUDGMENT ACCORDINGLY.

LAKE, J., dissented.