BELLEVUE IMPROVEMENT COMPANY ET AL., APPELLANTS, V. VILLAGE OF BELLEVUE ET AL., APPELLEES.

FILED MARCH 22, 1894. No. 5502.

1. Pleading: TRANSCRIPT: REVIEW. Where an answer traverses certain allegations of a petition, not in direct language, but merely by reference to the numbers of the lines of the original petition where those allegations occur, and where the transcript filed in this court does not disclose the numbering of the lines upon the original petition, there having been a general finding for the defendants in the district court, this court will presume all the material allegations to have been put in issue by the answer.

2. Taxes: INJUNCTION TO RESTRAIN. A court of equity will not interfere to prevent the collection of taxes merely because the assessment was invalid. To obtain relief the plaintiff must bring himself within some recognized rule of equitable jurisprudence.

3. Taxation: VALUE OF PROPERTY: OATH OF ASSESSOR: INJUNCTION. Neither the fact that an assessment was not based upon the assessor's judgment as to the value of the property, nor that the assessor did not make or return an oath with the assessment roll, so vitiates the assessment as of itself to justify an

injunction against the collection of a general tax founded upon such assessment. *South Platte Land Co. v. City of Crete*, 11 Neb., 344, and *Wood v. Helmer*, 10 Neb., 65, followed.

4. ———: MULTIPLICITY OF SUITS: INJUNCTION. In such a case the fact that plaintiffs were the owners of a large number of lots affected by the tax will not justify interference for the purpose of preventing multiplicity of suits or to remove a cloud cast upon the title, section 144 of the revenue act providing an adequate remedy at law.

5. **Local Assessments.** Where a village board undertakes to levy and collect a local assessment for the construction of sidewalks, without in fact constructing the sidewalks, before obtaining any proposals for their construction, and before in any manner ascertaining or estimating the cost of their construction, *held*, that such local assessment is absolutely void.

6. **Void Taxes:** INJUNCTION. Where a tax is void, that is, where there is no tax which the plaintiff is in equity bound to pay, he may invoke the aid of a court of equity to protect his rights by an injunction, notwithstanding section 144 of the revenue act. *Touzalin v. City of Omaha*, 25 Neb., 817, followed.

APPEAL from the district court of Sarpy county. Heard below before SCOTT, J.

The facts are stated in the opinion.

*Arthur C. Wakeley*, for appellants:

The assessment for the regular taxes is void because plaintiffs' lots, utterly regardless of their value, relative situation, or local condition, were, by the assessor, lumped together, and indiscriminately assessed at a valuation of ten dollars each. (*California & Oregon Land Co. v. Gowen*, 48 Fed. Rep., 771.)

The assessment is void because the assessor did not actually view the lots in controversy, as required by the provisions of section 52, chapter 77, Compiled Statutes. (*Marsh v. Board of Supervisors of Clark County*, 42 Wis., 502; *State v. Dodge County*, 20 Neb., 598.)

The assessment is void because not verified as required

by section 63, chapter 77, Compiled Statutes. (*Morrill· v. Taylor*, 6 Neb., 236; *Lynam v. Anderson*, 9 Neb., 367; *Hallo v. Helmer*, 12 Neb., 87; *McNish v. Perrine*, 14 Neb., 582.)

The assessment is void because of the hostility of the deputy assessor to the improvement company. (Cooley, Taxation, ch. 24, p. 547.)

There can be no valid tax without a previous legal and valid assessment. It is not enough that there should be a mere formal assessment by some process. The rule by which the value is determined must be one that may lead to approximately correct results. If an arbitrary rule or process is resorted to for determining the value instead of the best judgment of the assessor, it is fatal to the validity of the assessment. (Cooley, Taxation, ch. 12, p. 258; Blackwell, Tax Titles [5th ed.], sec. 194; *City of Nebraska City v. Nebraska City Hydraulic Gas & Coke Co.*, 9 Neb., 339; *Lynam v. Anderson*, 9 Neb., 367; *South Platte Land Co. v. City of Crete*, 11 Neb., 344; *Hallo v. Helmer*, 12 Neb., 87; *McNish v. Perrine*, 14 Neb., 582; *Hersey v. Board of Supervisors of Barron County*, 37 Wis., 75; *Johnson v. City of Milwaukee*, 40 Wis., 315; *Marsh v. Board of Supervisors of Clark County*, 42 Wis., 502; *Plumer v. Board of Supervisors of Marathon County*, 46 Wis., 163; *Watkins v. Zwietusch*, 47 Wis., 513; *Graves v. Bruen*, 11 Ill., 431; *City of Chicago v. Burtice*, 24 Ill., 489; *Chicago, B. & Q. R. Co. v. Cole*, 75 Ill., 594; *McCready v. Sexton*, 29 Ia., 356; *State v. Cook*, 82 Mo., 185; *Woodman v. Auditor General*, 52 Mich., 28; *Perry County v. Selma, M. & M. R. Co.*, 58 Ala., 546; *McReynolds v. Longenberger*, 57 Pa. St., 13; *California & Oregon Land Co. v. Gowen*, 48 Fed. Rep., 771.)

That injunction is a proper remedy to remove or prevent a cloud upon title to real estate by the assessment of an illegal tax or the issuing of a tax certificate or tax deed based upon such illegal tax, creating a lien, real or appar-

ent, on real estate, is no longer doubted. (*South Platte Land Co. v. Buffalo County,* 7 Neb., 253; High, Injunctions, sec. 494; Blackwell, Tax Titles [5th ed.], sec. 1056; *Town of Ottawa v. Walker,* 21 Ill., 605; *Dunnovan v. Green,* 57 Ill., 63; *Olmstead v. Henry County,* 24 Ia., 33; *Louisville & N. R. Co. v. Warren County,* 5 Bush [Ky.], 243; *Palmer v. Rich,* 12 Mich., 414; *Scofield v. City of Lansing,* 17 Mich., 437; *Chicago, B. & Q. R. Co. v. Cole,* 75 Ill., 591; *Johnson v. Hahn,* 4 Neb., 139; *Crane v. City of Janesville,* 20 Wis., 305*; *Milwaukee Iron Co. v. Town of Hubbard,* 29 Wis., 57; *Marquette, H. & O. R. Co. v. City of Marquette,* 35 Mich., 504.)

The plaintiffs are entitled to an injunction, notwithstanding section 144 of the revenue law. (*Touzalin v. City of Omaha,* 25 Neb., 824; *Thatcher v. Adams County,* 19 Neb., 486.)

*John Q. Goss, contra:*

The assessor evidently adopted the suggestion of the board of assessors, as to the valuation of the lots in Bellevue, and made the value suggested by them his assessment, which, while irregular, does not render a tax levied thereunder void. (*Hull v. Kearney County,* 13 Neb., 539; *South Platte Land Co. v. City of Crete,* 11 Neb., 344.)

The informality complained of as to the signing of the oath by the assessor does not affect the validity of the tax levy. (Comp. Stats., secs. 141, 142, ch. 77; *Wood v. Helmer,* 10 Neb., 65; *South Platte Land Co. v. City of Crete,* 11 Neb., 344; *McClure v. Warner,* 16 Neb., 447.)

The authority to levy special assessments for sidewalks is clearly vested in the boards of trustees of villages. The tax was not for an illegal or unauthorized purpose, and the action of the board will not be interfered with by injunction. (Comp. Stats., sec. 69, subd. 7, ch. 14; *Wilson v. City of Auburn,* 27 Neb., 435; 1 High, Injunctions, sec. 490.)

Injunction is not the proper remedy, and cannot be al-

lowed in cases of this character. (Comp. Stats., sec. 144, ch. 77; *Burlington & M. R. R. Co. v. Seward County*, 10 Neb., 211; *Wilson v. City of Auburn*, 27 Neb., 435; 1 High, Injunctions [2d ed.], secs. 485–488, 502, 503, 544, 545.)

A person deeming himself aggrieved by the assessment of his property has his remedy before the board of equalization. (Comp. Stats., sec. 70, ch. 77.)

From the decision of that board error lies to the district court, and the action of the board will not be reviewed in equity proceedings. (Code of Civil Procedure, sec. 580; *Sioux City & P. R. Co. v. Washington County*, 3 Neb., 30; *McGee v. State*, 32 Neb., 154.)

IRVINE, C.

This is an action to enjoin the collection of certain taxes. A temporary injunction was granted, but on final hearing dissolved and the action dismissed. The county clerk was made a defendant, and it was sought to enjoin him from transcribing and carrying out upon the assessment rolls the taxes complained of and delivering the tax list to the treasurer. The parties, pending the action, stipulated that this portion of the injunction should be vacated. This practically discharged the county clerk from the action, and the decree, so far as it affects him, must, in any view of the case, be affirmed.

The petition commenced by pleading a number of acts of the territorial legislature incorporating the city of Bellevue, and by pleading that in 1893 certain proceedings were had for the purpose of incorporating the same territory as the village of Bellevue under the general law. It is alleged that these later proceedings were void; that the alleged city of Bellevue remains in existence, and that there is no such municipality as the village of Bellevue. The answer upon this point denies certain of the allegations of the petition, but it does not traverse them in direct lan-

guage, but refers to them by the numbers of the lines upon which they appeared in the original petition. No motion was made to make the answer more specific. We have not the original petition before us, and cannot, therefore, ascertain what facts were put in issue. Upon appeal, the presumption is in favor of the correctness of the judgment, and we must resolve such doubts as arise as to the issues framed, in such manner as to support the judgment below, and therefore treat all these allegations as in issue. No evidence was introduced in their support. No argument is addressed to that portion of the case. Without deciding the question as to the validity of taxes sought to be imposed by a municipal corporation *de facto* and not *de jure*, we must presume the legal existence of the village of Bellevue.

The plaintiffs show that they are the owners of about 3,300 lots in that village and they complain of two classes of taxes sought to be imposed upon them. One of these classes consists of general taxes, attempted to be levied for municipal purposes. The other consists of local assessments levied for sidewalk purposes. These classes require separate treatment.

1. As to the general taxes, the petition contains many allegations to the effect that while the corporate limits are large, the actual village is very small, and that nearly all of plaintiffs' lots lie entirely outside of the village proper; that except upon paper they have no existence as lots; that no streets pass along them, and that they constitute an open, uncultivated area of land. There is some evidence in support of these allegations, but no right is claimed in argument by reason thereof, except indirectly as affecting the justice of the tax, and we shall therefore pass over these issues without further comment as to their legal effect. It is alleged that each of said lots, regardless of its value, has been by the assessor valued at $10; that such valuation is greatly in excess of the true value of a portion of the lots,

and that the assessed valuation is enormously in excess of the valuation of other property similarly situated, and that an excessive valuation was placed upon plaintiffs' property because of an animosity toward the plaintiffs upon the part of the assessor. The petition further alleges that the assessment was not verified or sworn to according to law. Upon these averments the decision must rest. Some of them are established by the proof. As to others the evidence is uncertain or conflicting. The decree finds generally for the defendants, and this finding is supported by the evidence, in so far as it relates to the charges against the good faith of the assessor. It does, however, appear, without substantial contradiction, that the assessors for the different precincts of the county at their meeting determined arbitrarily that such lots should be uniformly assessed at $10 each, and that the assessment was so made in the case of the plaintiffs' lots because of such resolution and without any exercise of judgment upon the part of the assessor or his deputy, without a view of the property, and wholly regardless of the actual value of the different lots. It also appears that the valuation placed upon these lots was greatly in excess of the assessed valuation upon much other property in the vicinity apparently of as great actual value. But this feature is not important, because the remedy for a disproportionate valuation would be before the board of equalization. It further appears that the assessment was made by a deputy and that the oath taken and returned therewith is in statutory form, and purports to be the oath of the assessor; but that it was signed and made not by the assessor but by his deputy.

Section 51 of the revenue law permits an assessor, under certain circumstances, to appoint deputies, but it provides that such deputies shall make their returns to the assessor. It is the assessor himself who is required to make the returns to the county clerk, and by section 63 of the revenue act, required to make oath thereto. Perhaps, where a dep-

uty acts, an oath should be made by the deputy, but this does not excuse the assessor from making oath, whether or not he has a deputy. It is his duty to make the return to the county clerk under oath, and an assessment roll returned by a deputy to the county clerk under the oath of the deputy and without any oath by the assessor does not satisfy the law. If an injunction can be granted against the enforcement of a tax based upon this assessment, it must be based upon the theory that the assessment was absolutely void because of the fact that it was not the result of the assessor's estimate of the value of the property and because there was no proper oath returned therewith. There is a marked distinction between the position of a taxpayer who, in proceedings at law, defends upon the ground of illegality of the tax, and that of one who comes into a court of equity seeking affirmative relief. In the former case the taxpayer may stand upon his legal rights and insist upon a more or less strict compliance with the requirements of law. In the latter he must bring himself within some recognized principle of equitable jurisdiction. (*Wood v. Helmer*, 10 Neb., 65; *South Platte Land Co. v. City of Crete*, 11 Neb., 344; *Spargur v. Romine*, 38 Neb., 736.)

In *South Platte Land Co. v. City of Crete, supra*, the following language was used by LAKE, J.: "Instead of valuing the property according to his own judgment of its worth, the averment is that the city assessor adopted an assessment made by the precinct assessor, under the state law for general revenue purposes, returning to the city council a copy thereof as his own valuation. While the mode here adopted was not the one contemplated for fixing the value of property for the proposed levy, it was by no means void. In form, at least, it was correct, and, for aught that is shown, was entirely just and equitable to the plaintiff." It would seem that this case should be conclusive upon the one we are considering, in so far as relief is claimed upon the ground that the assessment proceeded

upon the basis of an arbitrary resolution of the county assessors and not upon the assessor's judgment of the value of the property. Nor will equity interfere to enjoin the collection of a tax for the reason that no oath was taken by the assessor or returned with the roll. (*Wood v. Helmer*, 10 Neb., 65; *South Platte Land Co. v. City of Crete*, 11 Neb., 344.)

The writer was at first of the opinion that the fact that the plaintiffs were the owners of 3,300 lots affected by this tax afforded a basis for the interposition of a court of equity for the purpose of preventing multiplicity of suits. Section 144 of the revenue act undertakes to prohibit the courts from restraining the collection of any tax unless it be assessed for an illegal or unauthorized purpose, but provides for the payment of invalid taxes under protest and the recovery of the sums so paid by a method pointed out by the statutes. Without determining at this point whether this section is valid in its entire scope, it is safe to say that it provides an adequate remedy at law against taxes which are merely irregular and not absolutely void, and its validity to that extent has been several times tacitly recognized by the court. (*Thatcher v. Adams County*, 19 Neb., 485; *Caldwell v. City of Lincoln*, 19 Neb., 569; *Price v. Lancaster County*, 18 Neb., 199.) Such a proceeding, so far as practicable, would be governed by the general provisions of the Code of Civil Procedure, and we can see no reason why a claim for the refunding of such taxes upon all these lots should not be embraced in a single proceeding.

We have not overlooked the fact that the taxes here complained against are levied for village purposes and not for general, state, or county purposes. But we think that section 144 applies to such taxes. The authority for the levy of such taxes is found in section 82 of the act relating to cities of the second class and villages. It provides for the certification of the levy to the county clerk, for the entry by the county clerk of that levy upon the proper

tax list, and for the collection of the same in the manner provided for the collection of state and county taxes. The provisions of the revenue act are, therefore, applicable to village taxes, at least in so far as their enforcement is concerned. Section 144 of the revenue law in some of its parts refers expressly to village taxes, and it is clear that that section is applicable.

In many states courts of equity interfere to restrain the enforcement of invalid taxes upon real estate upon the ground that they cast a cloud upon plaintiff's title, but an inspection of the decisions of this court shows that this principle has not been here recognized. This feature has existed in each of the cases where relief has been refused upon the general ground that no established rule of equity jurisprudence has been invoked to sustain the suit. While if the writer were free to exercise his individual judgment he might reach a conclusion other than the one now expressed, he feels bound by the past adjudications of the court to declare that this tax is not absolutely void; that no ground has been shown for equitable interposition, and that section 144 of the revenue act provides the plaintiffs with an adequate remedy. Upon this branch of the case the judgment of the district court was right.

2. As to the local assessment for sidewalks the situation is as follows: On May 18, 1891, there was a special meeting of the village board to " make arrangements for certain sidewalks in the village of Bellevue, as per notice given." The following resolution was passed:

" Resolved, By the board of trustees of the village of Bellevue, Sarpy county, Nebraska, that there shall be a sidewalk laid upon the following streets and avenues of the said village of Bellevue, to-wit: [Here follows a designation of the places where sidewalks were to be built]; and be it further resolved by the board of trustees of Bellevue that the valuation of the lots abutting on and adjoining the sidewalks and the amounts to be charged against each said

lot for the construction of said sidewalks shall be and hereby is assessed and levied as follows:" Then follows a list of lots with a valuation and the amount of assessment opposite each description.

On July 15 an ordinance was passed providing that sidewalks at the places designated should be constructed, describing the manner of construction, requiring the clerk, on or before August 1, to notify, in writing, the owners of lots abutting on the sidewalks, requiring said sidewalks to be laid, and providing that such owners might, at their option, build sidewalks adjoining their lots on or before the 1st of September, and that to such owners as complied with that provision the village clerk should issue certificates showing that such sidewalks had been built and that such owners should be entitled to a credit upon the county tax list for the full amount charged for sidewalk purposes against said lot. The ordinance also provided further that after the 1st day of September the committee on streets and alleys should advertise for proposals for the construction of the sidewalks remaining then unbuilt and the proposals laid before the board of trustees for acceptance or rejection. The ordinance then provided in a general way for contracts based upon the bids so received. These are all the proceedings upon the subject.

This case was tried in March, 1892, at which time no sidewalks had been constructed. Section 69 of the act relating to cities of the second class and villages gives villages, in the fourth subdivision, the power to construct sidewalks and to levy a special tax on the lots of land fronting on "said highway" to pay the expense of said improvement. Subdivision 7 provides that the assessments for such purposes shall be made by the board of trustees by a resolution fixing the valuation of each lot assessed, taking into account the benefit derived or injury sustained in consequence of such contemplated improvement, and the amounts charged against the same. The principal objec-

tion urged by counsel against these assessments is that it does not appear that they were made in proportion to the special benefits conferred. It is clear from an inspection of the resolution that the assessment was not made in proportion to street frontage, and we are aware that some courts have held that where an estimate of benefits does not affirmatively appear, the question as to whether or not the assessment was based upon benefits is open to inquiry by the court. (*Chamberlain v. City of Cleveland*, 34 O. St., 551.) ⁚ But we think the better rule to be that it should be presumed that such assessments are based upon the special benefits conferred and do not exceed such benefits. The record does not show that these lots would not be benefited by such an improvement to the full amount of the tax. The argument is made that because they are assessed at only $10 each, while the assessment for sidewalks in many cases greatly exceeded this assessed valuation, said assessment must exceed the benefits conferred; but it is not impossible that a lot which, because of inaccessibility, was only worth $10 should become worth many times that sum where, by the improvement of streets, it is rendered accessible. To our mind the serious feature of this local assessment lies in the fact that it was levied before any work was done, before any contract was made for the performance of the work, and before any estimate was made of the cost of the improvement. The authority of villages is only to defray the expense of the improvement by local assessment. There is required, as a basis for the assessment, at least some estimate made with reasonable certainty of that expense.

It is said in Cooley, Taxation [2d ed.], 665: "There is no reason in the nature of things why an assessment should not be made before the work is actually done and before the cost shall be finally and conclusively determined. * * A city must also, in order to be enabled to perform its agency to advantage, be allowed to make the assessment and even the collection, if it shall be deemed proper, in ad-

vance. It has been repeatedly held that this is admissible." Three cases are cited in support of that rule. Of these *Manice v. City of New York*, 8 N. Y., 120, holds, not that the assessment may be made before the work is done, but that the city might do the work at its own expense and make the assessment after the work was completed. *Henderson v. City of Baltimore*, 8 Md., 352, was under a very broad statute, and does hold that payment might be enforced before any portion of the work is commenced; but it appears from the statement of the case that a contract had been made prior to the assessment, so that the cost of the work was determined. *Scovill v. City of Cleveland*, 1 O. St., 126, holds that an assessment was not void because in excess of the actual cost, but that was under a statute requiring the appointment of a committee of freeholders, first, to estimate the cost of the improvement, and, second, to assess the expense thereof to the property benefited. Here a fair method of estimating the expense was provided, and it clearly appears from the opinion that the making of such an estimate must precede the assessment and is an essential prerequisite thereto.

In the case before us there was no estimate of the expense, but the assessment was made arbitrarily months before any steps were taken for ascertaining the expense. Moreover, at the time of trial the improvements had not been made. To permit a village board or city council to impose local assessments in this manner, without regard to the cost of the improvement and without in fact making the improvement, would be to permit a confiscation of property under the guise of an assessment for contemplated improvements which, if made, would benefit the property, but without a *bona fide* intention of making them. We think, therefore, that these assessments were absolutely void. The case in this feature is analogous in principle to that of *Touzalin v. City of Omaha*, 25 Neb., 817. In that case the court granted an injunction against the enforcement

of a tax for grading a street upon the ground that the place graded had not been laid out as a street, and that plaintiff's property was not adjacent to or abutting upon the street graded, it being held in that case that a court of equity would enjoin the enforcement of a void tax, notwithstanding a section of the city charter substantially similar to section 144 of the revenue act. We think the assessment for sidewalks was absolutely void, there being a marked distinction between a tax for general purposes to which all property is equitably and legally bound to contribute, the plaintiff merely seeking relief because the forms required by law were not complied with, and a local assessment for the cost of improvements, where the only constitutional basis is benefits conferred, and the plaintiff asserts and proves that the cost was not considered and no benefits were conferred.

DECREE ACCORDINGLY.