Morris v. Merrell.

---

NELSON MORRIS, APPELLANT, v. MARION G. MERRELL ET AL., APPELLEES.

FILED APRIL 4, 1895.    No. 6745.

1. **Counties:** COUNTY BOARD: PROCEEDINGS.    County commissioners cannot legally transact county business except at a regular session of the county board, or one specially called by the county clerk of which notice is given in the mode provided by law.

2. ———: LOCATION OF DRAINAGE DITCHES: VALIDITY OF PROCEEDING.    On July 9, 1892, a petition for the location and construction of a ditch was filed with the county clerk of B. county, and on the same day the county commissioners adjourned to meet

on August 2, following.   On July 16, without any special ses-
sion of the county board being called, two members of the board
of county commissioners, together with the county surveyor, met
at the office of the county clerk, and upon consideration of said
petition located the proposed ditch and ordered the construction
thereof.   *Held*, That the proceedings were a nullity, and the spe-
cial assessments levied for the purpose of paying for such im-
provement were absolutely void.

3. **Injunction:** RESTRAINING COLLECTION OF VOID TAXES: PAR-
     TIES.   A party who is not guilty of laches may invoke the aid
     of a court of equity to restrain the collection of a void tax or
     assessment.

APPEAL from the district court of Burt county.   Heard
below before FERGUSON, J.

*Wharton & Baird* and *H. Wade Gillis*, for appellant,
cited: *Commissioners of Merrick County v. Baty*, 10 Neb.,
176; *Morrill v. Taylor*, 6 Neb., 246; *Lyman v. Anderson*,
9 Neb., 367.

*W. G. Sears, Lake, Hamilton & Maxwell*, and *Jesse T.
Davis, contra*, cited: *Touzalin v. City of Omaha*, 25 Neb.,
817.

*Ira Thomas*, also for appellees.

NORVAL, C. J.

This action was brought by Nelson Morris in the district
court of Burt county to enjoin the location and construc-
tion of a ditch over his lands, and to restrain the collection
of the special assessments made against said lands for the
purpose of paying the costs of constructing said ditch.   A
general demurrer to the petition was sustained by the court
and the action dismissed.   Plaintiff appeals.

It appears from the petition that on the 9th day of July,
1892, there was filed in the office of the county clerk of
Burt county a petition signed by J. H. Stork and others,
praying the board of county commissioners to locate and

construct a ditch upon a certain described route the same being over and across lands owned by the plaintiff; that on the 16th day of the same month two of the county commissioners, W. T. Berry and F. E. Higley, with the county surveyor, W. E. Pratt, met in the county clerk's office and, upon consideration of the petition, entered an order upon the journal of the commissioners to the effect that the improvement is necessary and will be conducive to the public health, convenience, and welfare, and that the proposed location is the best and the most practicable route. W. E. Pratt was appointed engineer on said ditch, and ordered at once to make the necessary survey, levels, and estimates, also the assessments against the lands benefited by said improvement. Subsequently, the county commissioners adopted the report and assessment made by the engineer. Claims for damages by reason of the location of the ditch were allowed C. M. Woodworth, A. J. McClannahan, and May Burch, all other claims being rejected. Advertisement for bids for the construction of the proposed ditch was made, bids were received, and the contract for said construction was awarded to the defendant George Southerland. It is also alleged that on December 2, 1892, the county clerk, without any order or entry of an order from the board of county commissioners, made and delivered to the county treasurer a special duplicate containing said assessment; that the county treasurer, unless restrained, will advertise and sell plaintiff's land to pay said assessments; that the county commissioners will allow claims for work upon said ditch, for damages occasioned thereby and for payment for other costs and expenses, including services of the engineer; that George Sutherland threatens, and is about, to construct said ditch across the lands belonging to plaintiff. The sixth paragraph of the petition is in the following language:

"6. Plaintiff alleges that the whole of the proceedings of the board of county commissioners of said Burt

county, and of said county clerk, are utterly void and
without authority or warrant of law, because the said
county clerk did not at the next meeting, after the filing of
the petition for the construction of said ditch herein re-
ferred to, deliver a copy of said petition to the board of
county commissioners at their next meeting after the filing
of said petition on the 9th day of July, 1892. Plaintiff
alleges that on the 16th day of July, 1892, that the pre-
tended meeting of W. T. Berry and the hereinbefore men-
tioned F. E. Higley was utterly and absolutely void, with-
out authority or warrant at law, because the same was not
upon a day fixed by statute for holding meetings of boards
of county commissioners; that it was not a meeting which
had been called or pretended to be called, or was special, of
said board of county commissioners; nor was the same
upon a day to which said board of county commissioners
had adjourned, but plaintiff alleges the fact to be that on
the 9th day of July, 1892, said board of county commis-
sioners adjourned until the 2d day of August, 1892."

The first point made by the appellant, and upon which
he relies for a reversal of the judgment, is that the pro-
ceedings had on July 16, 1892, ordering and locating the
ditch in question, are without jurisdiction and void, for the
reason that the board of county commissioners were neither
in regular nor special session on that date, and therefore
could not legally transact any official business at that time.
In our view the objection is well taken. Sections 56 and
57, chapter 18, Compiled Statutes, are as follows:

"Sec. 56. The county commissioners shall meet and hold
sessions for the transaction of county business at the court
house in their respective counties, or at the usual place of
holding sessions of the district court, on the second Tues-
day in January, third Monday in June, and first Tuesday
in October of each year, and may adjourn from time to
time.

"Sec. 57. The county clerk shall have power to call

special sessions when the interests of the county demand it, upon giving five days' notice of the time and object of calling the commissioners together, by posting up notices in three public places of the county, or by publication in a newspaper published therein."

The first section quoted above fixes the time for holding the regular meetings of the county board, and authorizes the board to prolong a session by regular adjournments. By said section 57 provision is made for the calling of special sessions of the county board, and it specifies by whom and in what manner the same shall be called, and prescribes the manner in which notice of such called session shall be given. The county commissioners of a county can only transact county business at the time specified in said section 56 or at some regular adjourned session of the board, or a special session called in the manner pointed out in section 57. Such is evidently the legislative will. The statute is imperative, and must be followed. A special session of the board can only be called in the mode provided by law and notice thereof must be published or posted as the statute directs. Such notice is essential to the validity of the proceedings at the special session. It is jurisdictional. The failure to give the required notice is not a mere irregularity. From an examination of the averments of the petition in this case it fully appears that the petition for the location of the ditch was filed on July 9, 1892, the same day on which the county board adjourned to meet on the 2d day of August, 1892. Without a called session of the county board, the commissioners, or any two of them, could not lawfully meet and transact county business prior to the last named date. The petition for the ditch was acted upon at an alleged session held on July 16th, at which but two of the commissioners were present. There was no call issued by the county clerk for the convening of the county board at that time, nor was any notice of such pretended meeting given. The proceedings locating the ditch were without

jurisdiction, and are void. They are of no greater validity than had the same been made by any other two citizens of the county. Suppose after this court has adjourned to a day certain two members thereof should meet at the capitol before the date fixed for the convening of the court and render a judgment in a pending cause. Would such judgment have any validity? Clearly not. (*In re Terrill*, 52 Kan., 29; *In re McClusky*, 52 Kan., 34.) In principle there is no distinction between the case supposed and the one before us. In *Morrill v. Taylor*, 6 Neb., 246, it is said: "The jurisdictional fact must exist before an irregularity can occur, for without the existence of such fact there is in law no assessment, and all subsequent acts of the officers are mere nullities."

It is argued by counsel for appellees that plaintiff cannot maintain this action for the reason he has not paid to the county treasurer the amount of the alleged special assessment made against his lands. This contention is founded upon section 28 of "An act to provide for draining marsh and swamp lands in the state of Nebraska," the same being chapter 89 of the Compiled Statutes. The section declares: "The collection of assessments to be levied to pay for the location or construction of any ditch shall not be enjoined nor declared void; nor shall said assessment be set aside in consequence of any error or irregularity committed or appearing in any of the proceedings provided by this act, and no injunction shall be allowed restraining the collection of any assessment until the party complaining shall first pay to the county treasurer the amount of his assessment, which amount so paid may be recovered from the county in an action brought for that purpose in case such injunction is made perpetual." It must be conceded that the foregoing provision applies to all cases where a mere error or irregularity has been committed in the proceedings leading up to, and including, the assessment. Where the assessment is not void, but is simply irregular or erro-

neous, a court of equity will not interfere by injunction to prevent the collecting of such assessment. (*South Platte Land Co v. City of Crete*, 11 Neb., 344; *Spargur v. Romine*, 38 Neb., 736.) But the rule is otherwise where the assessments are absolutely void for want of jurisdiction or power to impose the same. In such case, a party may invoke the aid of a court of equity, notwithstanding the provisions of said section 28. (*Touzalin v. City of Omaha*, 25 Neb., 817; *Bellevue Improvement Co. v. Village of Bellevue*, 39 Neb., 876; *Thatcher v. Adams County*, 19 Neb., 485.)

This court, in construing a provision similar to said section 28, in the opinion in *Touzalin v. City of Omaha, supra,* uses this language: "It will be observed that the above statute relates to a special tax or assessment which is apparently legal, but by reason of irregularities or error in the proceedings may be open to attack. It does not apply to a tax or assessment which is absolutely void. Where a tax is just in itself, but there are irregularities or errors in the proceedings, or where a party has permitted a municipality to improve his property and add to its value by grading or othewise improving the streets of the city, the legislature no doubt by general statute may require him to pay the taxes assessed against his property for such improvements, and provide the procedure by which the same or some portion thereof claimed to be illegal may be recovered back. Injunctions to prevent the collection of taxes are not favored, and should only be granted where the relief at law is wholly inadequate. If, however, the tax is void, in other words, is levied without authority of law, the forms of law nevertheless being used to cast a cloud upon the title of the party's real estate and thereby diminish its value, the power of the legislature to close the doors of the courts to aid the taxpayer is very doubtful. A void tax is no tax. How then can the statute debar the taxpayer from enjoining the unlawful sale of his property to pay such al-

leged taxes?   The law might as well authorize the seizure of the property of A by force and violence, and without authority, to pay the debts of a municipality as to seize and sell such property under a void assessment.   In either case the taxpayer may invoke the aid of the courts to protect him from wrong and oppression.   The rule is, that where public officers are proceeding illegally under claim of right they may be enjoined. (*Johnson v. Hahn*, 4 Neb., 139; *Mohawk & H. R. R. Co. v. Artcher*, 6 Paige Ch. [N. Y.], 88; *Belknap v. Belknap*, 2 Johns. Ch. [N. Y.], 472; *Livingston v. Livingston*, 6 Johns. Ch. [N. Y.], 497; *Hamilton v. Cummings*, 1 Johns. Ch. [N. Y.], 516; *Hughes v. Trustees*, 1 Ves. Sr. [Eng.], 188.)"

Having reached the conclusion that the proceedings by which the ditch was located and the alleged assessments made, were not irregular or erroneous merely, but entirely void, it follows that plaintiff was not required to pay such assessment and then bring an action at law to recover the money back, but is entitled to invoke the aid of a court of equity to restrain the collection of the assessment. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.