GEORGE W. SHADBOLT, APPELLANT, v. COUNTY OF CHERRY ET AL., APPELLEES.

174 N. W. 2d 733

Filed February 20, 1970. No. 37363.

Michael V. Smith, for appellant.

Richard L. Spittler, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

Land owned by George W. Shadbolt formed part of Gordon Memorial Hospital District in Cherry County, part of the district lying in an adjoining county. Voters of Cherry County on initiative petition authorized a county hospital. Shadbolt subsequently sued to invalidate the election. Motion of the county and its commissioners, defendants, for summary judgment was sustained, and this appeal has been taken.

Shadbolt asserts: (1) Failure of the county clerk to notify the public of a special meeting of the board to call the election nullified the proceeding; (2) the ballot did not respond to the petition; (3) the proposition was dual; and (4) the election effected violations of Article I, section 25, and Article VIII, section 1, Constitution of Nebraska, which prohibit discrimination and require uniformity in taxation.

The county clerk on January 20, 1969, undertook to

notify the public of a special session of the board on January 22 to consider the initiative petition. He simply posted a typewritten notice on the bulletin board outside the meeting room but away from daily courthouse traffic.

The county board at the special session responded to the initiative petition which proposed an election on a bond issue to acquire or construct a county hospital... The proposition at the election, called for March 4, 1969, in the board resolution was to be whether the board should issue general obligation bonds to purchase, acquire, or construct a county hospital. The ballot stated the proposition as follows: "Shall the Board . . . issue . . . bonds . . . for the purpose of paying the cost of acquiring the existing facilities for a county community hospital or purchasing a site and constructing thereon a county community hospital and purchasing suitable equipment for the same . . . ."

County clerks have power to call special sessions upon 5 days' notification by publication in three public places. § 23-154, R. R. S. 1943. In Morris v. Merrell, 44 Neb. 423, 62 N. W. 865 (1895), notification of a special session to the three commissioners or to the public was not given. The court held that an order by two of the commissioners for location and construction of a drainage ditch was void. Lack of jurisdiction was properly emphasized under the circumstances.

The applicable statutes provide: "The public policy of the State of Nebraska is that all public meetings should be preceded by some publicized notice . . . in order that the citizens of the state can intelligently exercise their democratic privilege of appearing at public sessions of governmental bodies . . . ." § 84-1402, R. S. Supp., 1967. "Any formal action of any type, including expenditure of funds, . . . taken at any meeting other than while open to the attendance of the public, shall be void." § 84-1405, R. S. Supp., 1967.

The initiative petition concededly was good. The

board's calling the election in response to it was ministerial and nonreviewable by appeal or error. See, § 23-343, R. S. Supp., 1967; Chaloupka v. Area Vocational Tech. School No. 2, 184 Neb. 196, 165 N. W. 2d 719 (1969). Public notification of meetings has not outranked the initiative on the scale of values for subsidiarity. The Legislature in encouraging the citizen to participate in local government has not set its policy at cross-purposes. Lack of notification to the public concerning a special meeting of a county board to call an election upon initiative petition under section 23-343, R. S. Supp., 1967, is insufficient to invalidate the resulting election. Cf. Inslee v. City of Bridgeport, 153 Neb. 559, 45 N. W. 2d 590 (1951).

On the ballot the words "acquiring the existing facilities" were an immaterial departure from the petition. The proposition was single. See Inslee v. City of Bridgeport, *supra.*

Gordon Memorial Hospital District, an independent district organized February 25, 1969, extends over parts of Cherry and Sheridan Counties. It possesses authority over annexation, land withdrawal, and dissolution upon approval of the voters. See §§ 23-343.30, 23-343.31, and 23-343.35, R. R. S. 1943. Although two or more adjoining counties may issue joint bonds for hospital purposes under section 23-343.15, R. R. S. 1943, the county in relation to the hospital district remains the basic unit.

An independent hospital district by section 23-343.21, R. S. Supp., 1967, may fractionate territories of counties. Harm from such district levies is insufficient to establish that levies by one of the counties for a county hospital violate Article I, section 25, or Article VIII, section 1, Constitution of Nebraska. Cf. City of Bellevue v. Eastern Sarpy County S. F. P. Dist., 180 Neb. 340, 143 N. W. 2d 62 (1966); City of Grand Island v. Ehlers, 180 Neb. 331, 142 N. W. 2d 770 (1966); Pleuler v. State, 11 Neb. 547, 10 N. W. 481 (1881). See, also, Simms

v. County of Los Angeles, 35 Cal. 2d 303, 217 P. 2d 936 (1950).

Defendants were entitled to summary judgment.

AFFIRMED.

NEWTON, J., dissenting in part and concurring in part.

I am unable to agree with one of the legal conclusions arrived at in the majority opinion. Section 23-154, R. R. S. 1943, sets out requirements for the calling of a valid special meeting of county commissioners. Adopted in 1879, it has stood the test of time and has never been amended. It was literally construed to mean exactly what it says as early as 1895 in the case of Morris v. Merrell, 44 Neb. 423, 62 N. W. 865. Down through the years it has, as a matter of practice, been steadfastly understood that no act of a county board, be it legislative, administrative, judicial, or ministerial in nature, was valid unless taken at a regular meeting or a special meeting called as required by statute.

The reasoning adopted is also applicable to section 23-153, R. R. S. 1943, which fixes the place where board meetings shall be held. If so applied, the county board could then meet anywhere, at any time, to deal with acts deemed "ministerial." Actually, in a case like the one before us, such irresponsible action deprives the people of the county of an opportunity to question or challenge the sufficiency of the initiative petition. Whether or not they would have done so is immaterial. The statute guarantees them the opportunity.

That the majority opinion runs counter to public policy is clearly enunciated by the Legislature in sections 84-1401 and 84-1402, R. S. Supp., 1967, adopted as recently as 1967. It is therein stated that: "The public policy of the State of Nebraska is that all public meetings should be preceded by some publicized notice specifying the time and place of all such meetings in order that the citizens of the state can intelligently exercise their democratic privilege of appearing at public sessions of governmental bodies." § 84-1402, R. S. Supp., 1967. Min-

isterial acts are not exempted from the announced policy. On the contrary, it refers to "all public meetings" of governing bodies.

In my judgment, the opinion adopted in this case is a partial nullification of all the legislative acts mentioned above and represents a direct and inexcusable encroachment by this court on the functions of the Legislature. It judicially approves what the Legislature expressly forbids.

Although, as indicated, I cannot agree that the action of the county board in calling an election at an unauthorized meeting was proper, I, nevertheless, concur in the result arrived at in the majority opinion. The error was not a fatal one, but this does not mean that other actions of a county board taken at irregular meetings, be they ministerial or otherwise, are to be sustained.

Section 23-343, R. S. Supp., 1967, provides for the establishment of county hospitals and the issuance of bonds for this purpose. Bonds may be issued only when authorized by a majority vote cast at an election called for such purpose. The election may be called by resolution of the county board or may be brought about by petition signed by 10 percent of the electors. If a proper petition is filed, the county board must call the election. The law distinguishes between challenges to election proceedings made before and after an election is actually held. Ordinarily compliance with statutory provisions is mandatory if enforcement is sought before an election, but after an election has been held, they are construed in support of the result of the election and are deemed to be directory only unless prejudice to a fair election appears. See, 29 C. J. S., Elections, § 67, p. 158; Haggard v. Misko, 164 Neb. 778, 83 N. W. 2d 483. No showing has been made that the error of the county board resulted in an unfair election and under such circumstances the election must be approved.

WHITE, C. J., and CARTER, J., join in dissenting in part and concurring in part.