STATE, EX REL. UNION PACIFIC RAILROAD COMPANY, RELATOR, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT, RESPONDENTS.

FILED MARCH 19, 1908.  No. 15,275.

1. **Taxation:** ASSESSMENT: COLLATERAL ATTACK. The state board of equalization and assessment, in valuing and assessing property for taxation, acts in a *quasi* judicial capacity, and its action is not subject to collateral attack, except on grounds of fraud or other wrongful conduct equivalent thereto, or for the exercise of power not conferred upon it by law.

2. ———: ———: Review. The action of such board is in its nature a final order, which may be reviewed in the district court by a petition in error.

3. ———: ———. Special Findings: Exceptions: Review. At the time fixed by the board of equalization and assessment for valuing and assessing railroads, and while that matter is being considered, a railroad company may present requests for special findings, which should be considered by the board, may object to the rulings made thereon, and take exceptions to such rulings. But, if it desires to have such interlocutory matters and rulings reviewed, it must preserve the same by a bill of exceptions, settled and allowed as provided by statute.

4. Mandamus: Taxation: Board of Equalization. A writ of mandamus will not lie to compel the board to make a record of objections and requests for rulings which are not required by law to be spread upon the record of its proceedings. Such matters should, if desired, be preserved and made a matter of record by a proper bill of exceptions.

Original application for a writ of mandamus to compel respondents, as the state board of equalization and assessment, to convene and make and record special findings in the valuation and assessment of relator's property for taxation, and to allow relator's exceptions thereto. *Writ denied.*

*John N. Baldwin* and *Edson Rich*, for relator.

*W. T. Thompson*, Attorney General, contra.

Barnes, C. J.

This is an application to the court, invoking its original jurisdiction, for a writ of mandamus directed to the respondents, as the state board of equalization and assessment, commanding them to convene as such board, and make special findings of facts in response to requests in writing submitted to them on May 31, 1907, and certain verbal requests made on June 1 of said year, to spread the same on the record of their proceedings in valuing and assessing the relator's railroad property for taxation, and to allow and record the relator's exceptions thereto. The

respondents have answered the affidavit and application, the evidence has been taken, and the case has been submitted on briefs and oral arguments.

It appears that the relator returned a sworn statement or schedule of its property on the 31st day of March, 1907, to the state board of equalization and assessment in accordance with the provisions of section 87, ch. 77, art. I, Comp. St. 1907, and has complied with all of the requirements of the board and of the revenue law in that behalf; that on the 6th day of May, 1907, the respondents held a meeting as a board of equalization and assessment, and proceeded to consider the question of the valuation of the relator's property; that other meetings for that purpose were held by them from time to time until May 31, 1907, when the officers and attorneys of the relator were present and presented their views as to the proper valuation to be placed upon its property; that on the said 31st day of May, and before any order had been made by the respondents valuing and assessing said property, the relator presented a written request to the board for special findings, in substance, as follows: First. To show to what extent and at what value the board considered the capital stock and bonds of the Union Pacific system (Union Pacific Railroad Company, Oregon Short Line Railroad Company, and Oregon Railroad & Navigation Company), and at what value such stocks and bonds were considered as applicable to the railroad mileage of the relator in Nebraska. Second. To state what deductions or subtractions were made from the entire capitalization of said system on account of its holdings of securities representing properties outside and distinct from the railroad mileage of the Union Pacific system; also, what deductions were made, if any, from such capital stock on account of the land assets and water-right properties belonging to said system; also, what deductions were made from such capital stock on account of right of way, grades, railroad tracks and buildings, and other railroad property on new lines belonging to the relator, subject to assessment by

the board and by local assessors in the state of Nebraska.
Third. To show in the records of the board to what extent and in what amount the gross earnings and net earnings of the Union Pacific Railroad Company were considered in fixing its taxable valuation in Nebraska.
Fourth. To show in the records to what extent and at what value the tangible property of the Union Pacific Railroad Company was considered in fixing the taxable value of its property in this state, and what deductions were made from said value on account of machine and repair shops, headquarters, storehouses and other property held for use in the operation of the relator's railroad in this state locally assessed. Fifth. To show in the records what per cent. of allowance was made in fixing the taxable value of the Union Pacific Railroad Company's property in this state, for the fact that lands, town lots, personal property, and all other property in this state, except railroad, is valued for taxation at much less than its real, true or market value; that the records of the board be made to show specifically and numerically the facts, methods and rulings indicated. And thereupon the respondents adjourned their board meeting to the day following, without taking any action on said requests. On the 1st day of June, 1907, the relator again appeared before the board, and was notified by the respondents that they would ignore said requests, and would refuse to take any action whatsoever thereon. The relator then requested the board to enter the fact of its refusal to act on said requests on its own records, which was refused, and the relator's request for exceptions to such refusal was also denied. Immediately thereafter the respondents passed a resolution valuing and assessing the relator's railroad within this state for taxation.

The relator contends that it was the plain duty of the board to make and enter of record the special findings requested, and to allow and record exceptions thereto; while the respondents, by their answer and brief, insist that the foregoing facts are not sufficient to constitute a

cause of action, or entitle the relator to any relief; that there is no legal obligation resting upon the respondents to perform the acts sought to be enforced by this proceeding; that the requests in question are impossible of answer, are wholly immaterial and of no utility or value to the relator. An examination of the authorities discloses that some of our former decisions are of considerable assistance in solving these questions. In the case of *State v. Savage*, 65 Neb. 714, it was said: "In assessing property for taxation purposes the board is clothed with *quasi* judicial powers as to the valuation of such property, and when it has once acted on sufficient information, and expressed an honest judgment as to such value, its judgment cannot be controlled by the writ of mandamus." As bearing on this question, see, also, *Hacker v. Howe*, 72 Neb. 385, where it is said: "The state board, in the equalization of assessments as between different counties, acts in *quasi* judicial capacity, and the action taken is not subject to collateral attack except upon grounds of fraud or other wrongful conduct equivalent thereto, or for the exercise of power not conferred upon it by law." We also find that we have uniformly held that the action of a taxing board is in its nature a final order, which cannot be attacked collaterally, and can only be reviewed on error or appeal. *McGee v. State*, 32 Neb. 149; *State v. Merrell*, 43 Neb. 575; *Chapel v. Franklin County*, 58 Neb. 544; *Sioux City & P. R. Co. v. Washington County*, 3 Neb. 30.

It is insisted by the respondents, however, that neither appeal nor error will lie from the final action of the board in valuing and assessing railroad property for taxation. We can readily agree with the first part of this contention, for appeal is purely a statutory remedy, and where no provision therefor is made by law the right to pursue that remedy does not exist; but when we come to consider the question of the relator's right to prosecute error to a court of competent jurisdiction an entirely different rule prevails. By section 580 of the code it is provided: "A judgment rendered, or final order made, by a probate court,

justice of the peace, or any other tribunal, board, or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court." It is further provided by sec. 581 of the code: "An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, is a final order which may be vacated, modified, or reversed, as provided in this title." In *Sioux City & P. R. Co. v. Washington County, supra,* it was held that an appeal from a decision made by the board of county commissioners sitting as a board of equalization of taxes does not lie to the district court. This because there was no statute in existence at that time providing for an appeal from such an order. It was said in that case: "The decision of the county board of equalization in fixing the assessed valuation of property and making the levy for taxes is a final order, and as such may be reviewed in the district court upon petition in error." Evidently the intention and purpose of the relator in presenting its requests to the respondents, and asking for exceptions to their rulings thereon, was to lay a foundation for a review of the proceedings of the board in the proper court by a petition in error. It is a rule of long standing in this jurisdiction that to make such a proceeding effective the suitor must challenge the rulings of the court or tribunal, and have his exceptions to such rulings made a matter of record. This may be done if the matters presented are such as should be recorded. But where they are not properly a part of the record they must be preserved, if at all, by a bill of exceptions, as provided by section 311 of the code.

This brings us to the determination of the question whether the court, by mandamus, will require the respondents to perform the particular acts requested and demanded of them by the relator. The state board of equal-

ization and assessment has original and exclusive jurisdiction of the matter of the valuation and assessment of railroads in this state, and is given a wide discretion in the exercise of its powers and duties in that behalf. The section of the revenue law above mentioned contains a statement in detail of the several items of property which, together with their value, must be furnished, under oath, to that tribunal by each railroad company doing business in this state; and section 89, ch. 77, art. I, Comp. St. 1907, provides: "The returns of railroad companies or corporations shall not be held to be conclusive as to the value of said property, but the state board of equalization and assessment shall, from all the information which it is able to obtain, find the true value of all such property, including tangible property and franchises, and shall assess the same on the same basis as other property is hereby required to be assessed. The valuation of each mile to be determined by dividing the whole value by the number of miles of the main track of each road or line." So it is apparent that the respondents, in valuing and assessing the relator's railroad, were entitled to take into consideration all of the items of property, matters and things reported in the schedule furnished them by the relator, together with all other reliable information which they were able to obtain relating to the nature, kind and value of the relator's railroad. A full discussion of the powers and duties of the respondents, together with the matters and things which should be taken into consideration by them in assessing railroad property, will be found in *State v. Savage, supra,* to which we can add nothing; and it is sufficient for the purposes of this opinion to say that, in determining the value of the relator's railroad, it was the duty of the board to consider all the factors having the elements of property which enter into and form a part of the total property and assets of the corporation in this state. Whether such property be tangible or intangible, or a valuable privilege,or a contract right which enhances

13

the corporation estate, or adds to its income or earning capacity, it should be considered and taken into account by the assessing board in fixing the value of the property to be assessed. So it would seem that the board could readily state, in a general way, the matters and things taken into consideration in valuing and assessing the respondents' property for taxation.

Coming now to the special request that the respondents state the particular value of the stocks and bonds of the Union Pacific Railroad Company, the Oregon Short Line Railroad Company, and the Oregon Railroad & Navigation Company, considered as applicable to the railroad mileage of the relator in Nebraska, we are inclined to think that there is much merit in the claim of the respondents that it is impracticable and perhaps impossible for them to make a finding fixing, with mathematical precision, the value of the aforesaid properties as considered by them in arriving at their final conclusion. It is a matter of common knowledge that usually in estimating values the judgment of a court, assessing board or other tribunal composed of several individual members is arrived at by the sacrifice to some extent of individual opinion. It is quite likely that no two members of the board could agree upon the same value of any of the particular items of the relator's property, and yet by calculation, compromise and sacrifice of individual opinion they might all finally agree upon the total value of such property for taxation. And so the board should not be required to state the particular value of the several items of property included or excluded in their consideration leading up to the final order of valuation and assessment. The same may be said as to like demands found in the relator's second, third, fourth and fifth requests. Such matters should not be made a part of their record, and we are satisfied should not be made a part of the records of the assessment unless they are preserved and made so by a bill of exceptions settled and allowed by the presiding officer of the board. There is no provision of the statutes

requiring the respondent board to keep a record of its interlocutory rulings or the reasons therefor during the progress of a hearing upon the valuation of the property of railroad corporations for the purpose of taxation. While the orderly transaction of its business may prompt the board to keep such a record of its rulings upon such matters for its own convenience, yet it is not an essential requirement for the proper performance of its duties. There is no doubt that all the steps required by the statute in making an assessment should be preserved as a matter of record, in order to evidence and perpetuate the fact that the board has acted within its jurisdiction; but, as above stated, such record need not contain its rulings upon interlocutory questions, and when it records the matters necessary to confer upon it the power to act, its general proceedings, and the final result of its deliberations fixing the value of properties, it has performed all that the law contemplates in that behalf.

We have already set out and considered the requests made by the relator on the 31st day of May. It is shown that on June 1 the same requests were renewed, and that the relator asked that the refusal to act thereon be made a matter of record, which was refused. We are of opinion that the same considerations apply to these proceedings as to those of May 31. If the relator desired to make its requests and the rulings thereon a matter of record, it should have preserved them by a bill of exceptions. They are not a proper, necessary or essential part of the record of the proceedings, and hence a writ of mandamus will not issue to compel the board to make them so. It may be well to say that, in valuing and assessing railroad property for taxation, the rights of the taxpayer as well as those of the state should be carefully preserved, and all proper objections should be ruled upon, and exceptions thereto should be allowed. As clearly pointed out in *State v. Savage, supra,* the field of review of the action of the taxing board is only a narrow one at best, and this

renders it the more essential that due regard be paid to the rights of the taxpayer during its proceedings.

For the foregoing reasons, the writ of mandamus prayed for is refused.

WRIT DENIED.

REESE, J., not sitting.