INVESTORS SYNDICATE, APPELLANT, V. CHARLES W. BRYAN,
GOVERNOR, ET AL., APPELLEES.

FILED SEPTEMBER 29, 1925. No. 24532.

1. Banks and Banking: FOREIGN INVESTMENT COMPANIES: STATU-
TORY PROVISIONS. Sections 8055, 8056, and 8062, Comp. St. 1922,
construed, and *held* to fix a general standard to which all for-
eign instalment investment companies must conform, to entitle
them to a license to transact business in Nebraska, and it is
further *held*, that such statute vests in the department of trade
and commerce quasi-judicial power, in the proper exercise of
which power the department of trade and commerce shall de-
termine whether a foreign instalment investment company, ap-
plying for a certificate of approval, conforms to the standards
prescribed by the statute.

2. ———: ———: ———. Sections 8055, 8056, and 8062, Comp.
St. 1922, do not vest unrestrained, arbitrary power in the de-
partment of trade and commerce to grant to or withhold from a
foreign instalment investment company a certificate of approval
to transact business in Nebraska.

3. ———: ———: ———: CONSTITUTIONALITY. Sections 8055,
8056, and 8062, Comp. St. 1922, do not authorize or sanction the
taking of property without due process of law; nor do said
sections deny to any person or corporation the equal protection
of the law.

APPEAL from the district court for Lancaster county:
FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*Peterson & Devoe,* for appellant.

*O. S. Spillman, Attorney General,* and *Lee Basye, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD,
EVANS and THOMPSON, JJ.

GOOD, J.

Action by Investors Syndicate, a foreign corporation,
to enjoin the governor and deputy secretary of trade and
commerce of the state of Nebraska from interfering with
the conduct of plaintiff's business in this state. From a
decree of the district court denying it the relief sought,
plaintiff has appealed.

There is no substantial conflict in the evidence. Plaintiff is a corporation, organized under the laws of Minnesota, for the transaction of an instalment investment business. For a number of years it had been duly licensed to transact business in Nebraska; had built up quite an extensive business in this state, and had in its employ a large force of agents and field workers.

In January, 1924, plaintiff, in due form of law, made application to the department of trade and commerce for a renewal of its permit to transact its business in Nebraska. Citizens of the state filed a remonstrance against the issuance of a permit to the plaintiff, for the reason, as alleged, that its plan of business is unfair, unjust, inequitable and oppressive to the class of investors, and for other reasons which need not be considered. The deputy secretary of the department of trade and commerce, at plaintiff's request, fixed a time and place for a hearing upon its application and remonstrance thereto. In February, 1924, the hearing was held and evidence taken on behalf of the remonstrants and on behalf of plaintiff, and, after an examination of the evidence and of plaintiff's contracts and applications, the department of trade and commerce found that the proposed plan of business and the proposed contracts were unfair, unjust, inequitable and oppressive to the class of contributors, and entered an order, denying plaintiff a permit to transact business in Nebraska after March 1, 1924.

From this order plaintiff did not prosecute error, as it was privileged to do, pursuant to the provisions of section 9127, Comp. St. 1922. Instead, it began this action, on the theory that sections 8055, 8056, and 8062, Comp. St. 1922, are unconstitutional, as being in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States, and of section 3, art. I of the Constitution of the state of Nebraska; that the action of the department of trade and commerce was arbitrary, without authority of law, and that plaintiff had no adequate remedy except in an injunction proceeding.

Section 8055, Comp. St. 1922, provides: "It shall be the duty of the department of trade and commerce to examine carefully the statements and documents so filed (referring to the statements and documents required to be filed by section 8054), and if it finds that such instalment investment company is solvent, that its articles of incorporation or association, its constitution and by-laws, its proposed plan of business and proposed contract contain and provide for a fair, just and equitable plan for the transaction of business, it shall issue to such instalment investment company a certificate of approval; but if it finds that such articles of incorporation or association, charter, constitution, by-laws, plan of business or proposed contract contains any provision that is unfair, unjust, inequitable or oppressive to any class of contributors, it shall withhold its approval. All certificates of approval issued to foreign instalment investment companies shall be limited to those counties for which said company has filed with the department of trade and commerce appointments of attorneys, as required by the next preceding section, and that all certificates issued to such foreign instalment investment companies shall expire on the 31st day of January of the following year."

Section 8056, Comp. St. 1922, among other things, contains a provision making it unlawful for a foreign instalment investment company to transact business in Nebraska without first procuring a certificate of approval or license from the department of trade and commerce; and section 8062 provides for the infliction of penalties on such investment companies that transact business in the state of Nebraska, unless at the time they are holders of valid, unrevoked and unexpired certificates of approval from the department of trade and commerce.

Plaintiff earnestly contends that the above sections of the statute are void because they vest in an administrative board absolute, unregulated, and undefined discretion to grant or withhold its certificate of approval under general

statutory language, which fixes no standards or tests to which an applicant may knowingly conform, and from which it can be determined whether corporations, transacting precisely the same kind and character of business, have been or may be dealt with equally; that the statute attempts to vest in an administrative board absolute and arbitrary power to say which, if any, of two or more companies, proposing to transact the same kind of business in the same manner and under like conditions, may be permitted so to do in the state of Nebraska.

If the statutes, when properly construed, grant or attempt to grant to an administrative board such unrestricted and arbitrary discretion as plaintiff contends they do, then we will be compelled to hold that they are void because violative of both state and federal constitutional provisions. They would deny the equal protection of the law and violate the due process provisions of the Fourteenth Amendment to the federal Constitution. They would then fall within the class of statutes and ordinances that are condemned in *Yick Wo v. Hopkins,* 118 U. S. 356; *Tai Kee v. Minister of Interior,* 12 Hawaiian Rep. 164; *State v. Superior Court,* 113 Wash. 296; *City of Richmond, v. Dudley,* 129 Ind. 112; *City of Seattle v. Gibson,* 96 Wash. 425; *Bear v. City of Cedar Rapids,* 147 Ia. 341; *Hewitt v. State Board of Medical Examiners,* 148 Cal. 590, 3 L. R. A. n. s. 896.

We think the statutes under consideration, when properly construed, are not subject to the criticism made. In our opinion, they do not vest the department of trade and commerce with an arbitrary and unrestricted discretion to grant or withhold a certificate of approval. Fairly construed, the statute vests the department of trade and commerce with a quasi-judicial power; fixes standards for its guidance, and vests it with the judicial function of determining whether a company, seeking a certificate of approval, has met the requirements of the statute. The tests of the right to such certificate, under the statute, are that the company must be solvent; its articles of incorporation or

association, its constitution and by-laws, its proposed plan of business and proposed contracts must contain and provide a fair, just and equitable plan for the transaction of business. And, upon the other hand, if the department, after investigation, finds that the articles of incorporation or association, charter, constitution, by-laws, plan of business or proposed contract of any investment company contain any provision that is unfair, unjust, inequitable or oppressive to any class of contributors, it shall withhold its approval.

In *Mutual Film Corporation v. Industrial Commission,* 236 U. S. 230, the court had under consideration a very similar question. An Ohio statute provided that it should be unlawful for moving picture films to be publicly exhibited and displayed in that state until they had been submitted to, passed on and approved by a board of censors, and only such films should be approved as, in the judgment of the board, were moral, educational, or of amusing and harmless character. It was insisted in that case that the statute fixed no standard as to what was moral, educational, amusing and harmless, and that the statute permitted the board to exercise an arbitrary judgment and to act according to whim and caprice; that the statute attempted to delegate legislative authority to an administrative board and to substitute government by men for government by law. The court, however, held to a contrary view and upheld the statute. In *Mutual Film Corporation v. Hodges,* 236 U. S. 248, the court had under consideration a similar statute, enacted by the legislature of the state of Kansas. In that case it was likewise held that the statute did not delegate legislative power to an administrative official, and that it was not violative of the provisions of the Constitution.

In the instant case, power was given by statute to the department of trade and commerce to determine whether a foreign instalment investment company, desiring to do business in this state, has met the requirements of the legis-

lative standard, and, in conferring this quasi-judicial function upon the department of trade and commerce, the legislature did not delegate legislative power to such department; nor does the statute authorize the taking of property without due process of law, nor deny equal protection of the law. Other authorities, holding to the same general tenor, are *State v. Howard*, 69 Neb. 278; *Althaus v. State*, 99 Neb. 465; *Schaake v. Dolley*, 85 Kan. 598; *State v. Atlantic C. L. R. Co.*, 56 Fla. 617, 32 L. R. A. n. s. 639; *Moers v. City of Reading*, 21 Pa. St. 188, *State v. Thompson*, 160 Mo. 333, 54 L. R. A. 950; 12 C. J. 844, sec. 329.

Although it is alleged that, in refusing plaintiff's application, the department of trade and commerce acted in an arbitrary and unwarranted manner, we fail to find anything in the record to sustain the charge. It does not appear that any foreign investment company, with a like plan of doing business, has been given a license to operate in this state. We have carefully examined the proposed contracts of plaintiff and fully concur in the views and findings of the department of trade and commerce that the proposed contracts are unfair, unjust and inequitable to the class of contributors.

In reaching its conclusions, the court has been greatly aided by exceptionally able briefs on behalf of both parties, and by a written opinion of the learned trial judge, with which we fully agree. We find no error in the record. Judgment

AFFIRMED.