MID–CONTINENT AIRLINES, Inc. v. NEBRASKA STATE BOARD OF EQUALIZATION AND ASSESSMENT et al.

Civ. No. 32–51.

United States District Court
D. Nebraska, Lincoln Division.

June 7, 1952.

William J. Hotz and William J. Hotz, Jr. (Hotz & Hotz), of Omaha, Neb., for plaintiff.

Clarence S. Beck, Atty. Gen. of Nebraska, and William T. Gleeson, Asst. Atty. Gen. of Nebraska, for defendants.

Before WOODROUGH, Circuit Judge, DONOHOE, Chief Judge, and DELEHANT, District Judge.

DELEHANT, District Judge.

The plaintiff, a Delaware corporation, duly licensed by Civil Aeronautics Board to engage in interstate transportation of persons, property and mail by air for hire, and actually engaged in such transportation upon approved routes and schedules including the service of points in Nebraska, brings this action against the designated defendants, including, besides the Nebraska State Board of Equalization and Assessment, its ex officio members, and the Attorney General of the State. Unquestionably, diversity of citizenship exists and the amount in controversy admittedly exceeds, exclusive of interest and costs, the sum of $3,000.

In its complaint the plaintiff prays for a decree invalidating Sections 77–1244 to 1250, R.S.Neb.1943, Reissue of 1950[1], and enjoining the defendants from performing any of its provisions and from taking any steps for the enforcement against the plaintiff of the taxes for 1950 and 1951 already assessed against it under the statute upon its flight equipment, and for general relief.

Briefly stated, the basis of the prayer is the allegation that the cited statute is violative of the following aspects of the Constitution of the United States:

Article I, Section 8, Clause 3, whereby the power is committed to Congress "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes";

Article I, Section 9, Clause 5, forbidding the laying of a tax on articles exported from any state;

Article I, Section 9, Clause 6, immunizing vessels bound to, or from, one state from the obligation to pay duties in another;

Article I, Section 10, Clause 2, denying to the several states the right, without the consent of congress, to "lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing" their respective "inspection laws"; and

Article I, Section 10, Clause 3, forbidding the several states without the consent of congress to "lay any Duty of Tonnage".

The state statute at which the action is aimed establishes a program whereby the defendants, each performing his appropriate portion of the duty, are empowered in behalf of Nebraska annually to evaluate, and to assess, levy, and enforce the collection of, an ad valorem tax upon the flight equipment of air carriers incorporated or doing business in Nebraska.[2] The

---

1. The challenged statute erects a procedure for the taxation of the personal property—and more specifically the flight equipment—of air carriers.

2. The statute is made inapplicable to an air carrier engaged solely in intrastate transportation with its flight equipment based at one airport within Nebraska

basis of valuation upon which such tax is laid is discernible from the following excerpt from Section 77–1245, R.S.Neb.1943, Reissue of 1950:

"* * * The proportion of flight equipment allocated to this state for purposes of taxation shall be the arithmetical average of the following three ratios: (1) The ratio which the aircraft arrivals and departures within this state scheduled by such air carrier during the preceding calendar year bears to the total aircraft arrivals and departures within and without this state scheduled by such carrier during the same period; Provided, that in the case of nonscheduled operations all arrivals and departures shall be substituted for scheduled arrivals and departures; (2) the ratio which the revenue tons handled by such air carrier at airports within this state during the preceding calendar year bears to the total revenue tons handled by such carrier at airports within and without this state during the same period; and (3) the ratio which such air carrier's originating revenue within this state for the preceding calendar year bears to the total originating revenue of such carrier within and without this state for the same period."

The legislation requires each affected carrier to make to the Tax Commissioner before June 1 of each taxable year a report on a form to be prescribed by the commissioner containing the information requisite for the determination of the tax. From that information the commissioner is directed to find the value of the carrier's flight equipment and, according to the statutory formula, the proportion thereof allocable to its Nebraska operations and, upon the latter valuation, to levy a tax for the year in question "at a rate which shall be equal, as nearly as may be, to the average rate of all general taxes, state,

county, municipal, school, and local, levied throughout the several taxing districts of the state for the preceding year." Section 77–1249, R.S.1943, Reissue of 1950. Finally, it is provided by Section 77–1250, R.S. Neb.1943, Reissue of 1950, that "When levied, the tax shall be collected and paid in the same manner as the tax on car companies * * *."

This court has been convened in accordance with Title 28 U.S.C.A. §§ 2281 and 2284. Thus organized, it has heard and ruled on certain motions made by the defendants and received the evidence and testimony upon the submission of the action on its merits. Briefs have been submitted by counsel, both upon the tendered motions and upon the primary demands of the plaintiff.

Without offering a detailed factual analysis, the court notes this setting for the case. The plaintiff's business offices are in Kansas City, Missouri, from which its corporate affairs and transportation operations are directed and at whose airport it has very limited hangar and repair facilities. Its flight equipment, except when in operation or temporarily halted elsewhere returns regularly, as to a "home port" to the municipal airport at Minneapolis, Minnesota. There it maintains its storage hangars and has its repair site, equipment and personnel, by whom and with which its flight equipment undergo required periodical testing, inspection and repair as well as servicing, of a routine nature and of emergency origin.

Its transportation operations for the carriage of persons, freight, express and mail extend through the air along routes over parts of Minnesota, Wisconsin, the Dakotas, Iowa, Illinois, Missouri, Arkansas, Oklahoma, Texas, Louisiana and Nebraska, in each of which states it has terminal facilities at one or more airports.

Throughout 1950, its only Nebraska terminal was at Omaha at which point in in-

by the following language of subsection (1) of Section 77–1244, R.S.Neb.1943, Reissue of 1950:
" * * * any air carrier as herein defined, engaged solely in intrastate transportation, whose flight equipment is

based at only one airport within the state, shall be excepted from taxation under this section, but shall be subject to taxation in the same manner as other locally assessed property".

terstate operations it handled arriving and departing items of carriage of both persons and things including mail. But, by order upon application and hearing, and under a Certificate of Public Convenience and Necessity, the Civil Aeronautics Board of the United States, under date of May 16, 1951 granted the plaintiff authority for the period of three years commencing July 15, 1951 to utilize Lincoln, Nebraska also as a terminal point on certain flights. Since the effective date of that order and certificate its authority has been enjoyed and utilized by the plaintiff not only in its interstate operations, but also in intrastate carriage between Omaha and Lincoln.

The taxes already assessed against the plaintiff under the statute are those for 1950 and 1951, supra. For 1950 the plaintiff in compliance with the statute made its return, upon the basis of which the tax was computed and assessed. For 1951 the plaintiff refused to make a return, and in default of such a return the state authorities assessed the tax on the basis of the data within their possession.

The foregoing facts seem to the court to disclose the background of the case adequately for the ruling which is now announced. They would be substantially enlarged upon as the basis of decision, if the court were not persuaded that it ought not to determine the action on its merits.

For in the nature of the relief sought by the plaintiff, the court, before reaching a final decision on the prayer of the complaint, is confronted by the question of its jurisdiction, in the light of the nature and history of the tax in suit. That question would inevitably arise even in default of its presentation by the parties. But it has also been explicitly urged by the defendants. Before answering, they moved to dismiss on several grounds including the contention that the plaintiff had certain specified plain, speedy and efficient remedies[3] in the courts of Nebraska. That motion was denied on hearing. Thereupon, the defendants moved for an order staying the action and directing the plaintiff to institute in an appropriate court of the state

a suit for the construction and application to the plaintiff of the challenged statute. In the latter motion the defendants pointed out the possibility that the statute might be attacked as violative of Nebraska's constitution[4], the fact that no authoritative judicial construction of the challenged legislation by Nebraska's courts has ever been had, and the availability in Nebraska's courts of specifically indicated procedure whereby the issues now tendered may be presented. The court denied that motion but with the express reservation of its right, if it should be so advised, "to take the action which said motion requests, or some or any part thereof, upon its consideration of this cause after submission upon its merits". Answer, trial and submission followed. And the answer, especially in its final paragraph, preserves the jurisdictional question and points out the several unused procedural resources allegedly available to the plaintiff under Nebraska's law. (See footnote 3, supra).

Even before the intervention of immediately pertinent congressional action, infra, the courts of the United States had resolved against their entertainment and exercise of jurisdiction to intercept by injunction the enforcement and collection of state taxes on the ground of their repugnance to the constitution of the United States, in instances in which the law and procedure of the state provided an adequate but unused legal remedy for the assertion of the invalidity of the tax and the vindication of the taxpayer's right. Matthews v. Rodgers, 284 U.S. 521, 52 S. Ct. 217, 219, 76 L.Ed. 447, is fairly reflective of that thought. The opinion was filed in 1932 and arose out of an attack on a Mississippi license tax assessed (a) upon every person engaged in the business of buying and selling cotton for himself, and (b) in a smaller amount upon each employe engaged in such business, on the ground that it was an unconstitutional burden on interstate commerce. A three judge court had granted the injunction. The supreme court on appeal reversed that ruling for want of jurisdiction in the trial court. It

---

3. Including those discussed later herein.

4. No such challenge is made in this case.

was moved to that course from considerations of the common law want of equity jurisdiction in the face of the availability of an adequate remedy at law.[5] And it accepted as an adequate remedy at law no process of the Federal court (to which traditionally in testing Federal equity jurisdiction adequate legal remedies have been limited) but rather the right of the aggrieved taxpayer to pay the tax and sue in the state court for its recovery.

After recognizing that limit upon the equitable jurisdiction of the Federal courts, the court, speaking through Mr. Justice Stone, said:

"The reason for this guiding principle is of peculiar force in cases where the suit, like the present one, is brought to enjoin the collection of a state tax in courts of a different, though paramount, sovereignty. The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved, Jud.Code § 237, or to his suit at law in the federal courts if the essential elements of federal jurisdiction are present. See Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U.S. 276, 29 S.Ct. 426, 53 L.Ed. 796; Shel-

ton v. Platt, 139 U.S. 591, 11 S.Ct. 646, 35 L.Ed. 273; Dows v. [City of] Chicago, 11 Wall. 108, 110, 112, 20 L.Ed. 65.

"It may be assumed that, if appellees do not pay the challenged tax, and in consequence of that omission they are subjected, as it is alleged they will be, to the civil and criminal penalties for nonpayment, the resulting injury to their business will be irreparable, and can be avoided only by resort to equity to prevent the threatened wrong. But appellants insist that the appellees are under no such constraint, either to expose themselves to the penalties for failure to pay the tax or to seek equitable relief against its collection, since each of them may pay the tax to the collecting officer under protest, and, under the laws of Mississippi, may maintain a suit at law for its recovery on the ground that it was exacted in violation of the Constitution of the United States. That such a procedure saves to the taxpayer his federal right, and, if available, will defeat the jurisdiction of federal courts to enjoin the collection of the tax, has long been the settled rule in this Court. Henrietta Mills v. Rutherford County, 281 U.S. 121, 50 S.Ct. 270, 74 L.Ed. 737; Arkansas Bldg. & Loan Ass'n v. Madden, 175 U.S. 269, 20 S.Ct. 119, 44 L.Ed. 159; Atchison, Topeka & Santa Fe Ry. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436; Shelton v. Platt, supra; Singer Sewing Machine Co. v. Benedict [229 U.S. 481, 33 S.Ct. 942, 57 L. Ed. 1288], supra; Allen v. Pullman's Palace Car Co., 139 U.S. 658, 11 S.Ct. 682, 35 L.Ed. 303; Indiana Mfg. Co. v. Koehne, 188 U.S. 681, 23 S.Ct. 452, 47 L.Ed. 651."

In 1943 the supreme court, speaking through then Mr. Chief Justice Stone, in Great Lakes Dredge & Dock Co. v. Huff-

---

5. Aided, it is true, by Section 16 of the Judiciary Act of 1789 (in its then form Title 28 U.S.C.A. § 384, Judicial Code, Section 267) declaring that suits in equity shall not be maintained in the courts of the United States "in any case where a plain, adequate, and complete remedy may be had at law". But of that section the opinion stated that its effect "was but declaratory of the rule in equity, established long before its adoption".

man, 319 U.S. 293, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407, extended the rule of Matthews v. Rodgers, supra, to the length of holding that a Federal district court in the exercise of its discretion should have refused, without consideration of the merits, to grant relief in the way of a declaratory judgment of invalidity on the ground of its burdensome impact on interstate commerce in respect of a Louisiana tax under that state's Unemployment Compensation Law.[6] Louisiana had a statute allowing the institution and prosecution in its courts of a suit for the recovery of taxes illegally collected and paid. In effect, the case last cited dealt with an action for a declaratory judgment of the nullity, in the face of the national constitution, of a state tax, in like manner as Matthews v. Rodgers, supra, had treated a suit for injunction against the enforcement of the tax on a like ground. And quite correctly, for the practical result is the same irrespective of the form in which the decree is entered.

In the interval measured by the two cited cases the Congress spoke on the subject. By the Act of August 21, 1937, 50 Statutes at Large, 738 it amended the then Section 24 of the Judicial Code (formerly Title 28 U.S.C.A. § 41(1) ), whereunder the principal grant of jurisdiction to the district courts was made, by adding this final sentence to that subsection:

"Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State."

That enactment was adverted to in Great Lakes Dredge & Dock Co. v. Huffman, supra, as supportive of the court's ruling, and as giving sanction to the earlier practice of the Federal equity courts reflected in Matthews v. Rodgers, supra. See also Miller v. City of Greenville, Miss., 8 Cir., 138 F.2d 712.

It may appropriately be suggested, however, that the quoted language of the Act of August 21, 1937 proceeded somewhat farther than the mere giving of sanction to the earlier equity practice. In the first place, it explicitly accorded to state remedies in equity like force, for the statutory purpose, with state remedies at law. Secondly, it emphatically denied jurisdiction to the Federal district courts in the situation statutorily supposed, thereby leaving in such circumstances no room for the exercise of judicial discretion to exercise or not to exercise a claimed jurisdiction.

In the currently effective revision of the Code, the quoted amendment of the Act of August 21, 1937, parce detorta, appears as Title 28 U.S.C.A. § 1341. Its language follows:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

The simple language of that section, rationally understood, seems to forbid this court's entertainment of an action of this character if the state by which the tax in suit was laid provides in its courts a plain, speedy and efficient remedy whereby the legality of the tax may be tested. And by the logic of Great Lakes Dredge & Dock Co. v. Huffman, supra, that consequence is equally imperative whether the relief asked be by way of an ordinary injunction or through a practically equivalent declaratory judgment of nullity.

Prompted by the disparity in emphasis which is observable in the language of Section 1341 and the Act of August 21, 1937, it may be suggested that the present stat-

6. Interestingly, the final ruling was the affirmance of the decision of the Court of Appeals affirming the judgment of the district court denying a declaratory judgment on the merits of the suit and because, in the trial court's view, the tax was valid. But in that case, the supreme court premised its action " * * * solely on the ground that, in the appropriate exercise of the court's discretion, relief by way of a declaratory judgment should have been denied without consideration of the merits."

ute is not a barrier to jurisdiction but is effective merely to intercept the grant of relief to the complaining taxpayer. But that thought must be rejected. It will not be supposed that under Section 1341 the court may try an action of this character, though an adequate state remedy be discernible, and render judgment on the merits if, but only if, its finding and conclusion sustain the tax. Jurisdiction involves more than that. It involves the right and power to try and determine a cause in favor of either party. See also application of the present statute in Kansas City Southern R. Co. v. Morley, D.C.Ark., 88 F.Supp. 300.

Somewhat analogous is the recent history of the jurisdiction of this court in habeas corpus proceedings brought by or in behalf of a prisoner in custody by virtue of the judgment of a state court. Even before the enactment of formal legislation on the subject, it had been determined that in such a case the prisoner should be required to exhaust the remedies to him available under the laws and in the courts of the imprisoning state. Ex parte Hawk, 321 U. S. 114, 64 S.Ct. 448, 88 L.Ed. 572. That rule, originally of judicial erection, is now reflected in Title 28 U.S.C.A. § 2254 which, concerning a person in custody pursuant to the judgment of a state court who has not exhausted his state remedies, says simply that, "An application for a writ of habeas corpus" in his behalf "shall not be granted". But even before the passage of the statute, the rule of deference to state procedures was held to thwart Federal court jurisdiction. Hawk v. Jones, 8 Cir., 160 F.2d 807, certiorari denied 332 U. S. 779, 68 S.Ct. 44, 92 L.Ed. 363; U. S. ex rel. Carter v. Ragen, 7 cir., 153 F.2d 902; Ex parte Barnard, D.C.Ill., 52 F. Supp. 102; In re Ryan, D.C.Pa., 47 F.Supp. 10. It will not be supposed that Section 2254 is less operative than was the antecedent judicially devised rule to deny such jurisdiction.

■ In testing its jurisdiction, this court, therefore, proceeds to inquire whether, under Nebraska's law, the plaintiff has a plain, speedy and efficient remedy in the state's courts. Obviously, such a remedy may be either legal or equitable. See Title 28 U. S.C.A. § 1341, and Reviser's Notes thereon.

■ As a preliminary aspect of that inquiry, attention is first given to an allegation by the plaintiff "that it has done all that is reasonably required of it to do to obtain an adjudication of the invalidity of said act by the courts of Nebraska," and that " * * * it is entitled to equitable relief from this court rather than be required further to attempt to obtain relief in the state court." (paragraph XVIII of complaint). That position is bottomed on an allegation appearing earlier in the complaint of the history, including the dispositive opinion, of the case of Mid-Continent Airlines Inc. v. State Board of Equalization and Assessment, 154 Neb. 371, 48 N.W. 2d 81, 83. In it the plaintiff after its participation in the proceedings of the State Tax Commissioner preliminary to and including the assessment of the tax against it for 1950 (a part of the already assessed taxes involved in this action) and its later unsuccessful appeal from the action of the commissioner to the State Board of Equalization and Assessment, undertook under Section 77–510, R.S.Neb. 1943,[7] to appeal to the state supreme court from the Board's action. But the Supreme Court of Nebraska, with an explanatory opinion dismissed the appeal on the single ground that the right of appeal provided by Section 77–510, R.S.Neb.1943 is limited to proceedings for the equalization of assessments contemplated and regulated by the immediately

---

7. This court necessarily puts aside as irrelevant the plaintiff's attempted reference in its complaint to Section 77–617, R.S.Neb.1943 as a jurisdictional support of its resort to the Supreme Court of Nebraska. That court, in its reported opinion, said upon the point: "Obviously section 77–617, R.R.S.Neb.1943, is not involved here. That section relates to appeals in matters relating to the assessment of railroad property under different and separate statutory provisions." That observation, even if, as is not the case, it were considered by this court to be objectively incorrect, would be controlling here. Yoder v. Nu-Enamel Corporation, 8 Cir., 117 F.2d 488.

preceding five sections of the statute. And it would seem that, in addition to its familiar finality with this court, that view of the state's highest court is inevitably correct, for by the language of Section 77–510, R.S.Neb.1943 provision is made for appeal only "From any final decision of the State Board of Equalization and Assessment with respect to the valuation of any real or personal property". And the assault upon the challenged tax as there made was principally, and as here made is exclusively, directed to the property's taxability by the state under the National Constitution rather than to its evaluation. The plaintiff's antecedent state court suit, therefore, was not the exhaustion, but rather a misapprehension of state court remedies. And the question remains whether such remedies exist; for if they do they are, as yet, wholly untried by the plaintiff.

The parties apparently agree in their pleadings, and upon the trial concurred in the understanding, that in respect of this particular tax, no state remedy exists in the way of the plaintiff's payment of the tax, whether with or without protest, and prosecution of a subsequent action at law for its recovery. The court accepts that view as adequately valid.

In Section 77–1735, R.S.Neb.1943, Nebraska does have a statute providing, in connection with a tax, invalid because levied or assessed for an illegal or unauthorized purpose or for any other reason except that the property taxed was not liable to taxation or has been twice assessed in the same year, that the taxpayer within a limited time after the payment of such tax, may demand such tax in writing from the State Treasurer or the treasurer of the taxing subdivision of the state for the benefit or under the authority of which it was levied. And the same section provides for suit to recover the tax thus invalidly exacted if the demand be not complied with, but only against designated governmental subdivisions of the state, not against the state. Then, too, by sections 77–1729 to 77–1734, R.S.Neb.1943 provision is made, in respect of a tax invalid by reason of the non-liability to taxation, or double taxation, of the property involved, for the payment of the tax under filed written protest and for hearing on the protest and appeal to the courts from an adverse ruling thereon. But that procedure is entirely oriented to taxes assessed and levied ultimately by the county authorities and payable to the county treasurer. And under Section 77–1250, R.S.Neb.1943, Reissue of 1950, vide supra, by reference to Sections 77–629 to 631 relating to car companies, the tax presently involved is made payable to the State Tax Commissioner for use of the General Fund of the State. Recovery of this tax by suit, once it is paid, seems, therefore, to be unavailable in Nebraska's courts. Hence, that potential relief, which was one of the grounds of decision in Kansas City Southern R. Co. v. Morley, supra, would not alone support a like course in this proceeding, although the reasoning in that opinion is equally applicable to other plain, speedy and efficient state court remedies.

And this court considers that at least two such remedies are available if the asserted grounds of invalidity be meritorious. The first is through injunctive relief against the enforcement of the taxing statute and collection of the tax; the second by way of declaratory judgment. Each such remedy will be considered briefly.

It is true that Nebraska has a statute narrowly limiting the use of the remedy of injunction against the collection of its taxes. By Section 77–1727, R.S.Neb.1943, it is provided that:

"No injunction shall be granted by any court or judge in this state to restrain the collection of any tax, or any part thereof, nor to restrain the sale of any property for the nonpayment of any such tax * * *, except such tax or the part thereof enjoined * * *, be levied or assessed for illegal or unauthorized purpose."

Thereby injunctive relief against the enforcement of a tax is allowed only if and when the tax is levied or assessed for an illegal or unauthorized purpose. And that leads to the inquiry whether the challenged tax should be considered to have been levied and assessed for an illegal or unauthorized purpose, if it should be granted that

the plaintiff's flight equipment is, by the Federal constitution and the circumstances of its use, placed beyond the reach of local Nebraska taxation on an ad valorem basis.[8]

The language last quoted, virtually unchanged, is taken from Section 144 of Nebraska's Revenue Act of 1879, Laws of Nebraska, 1879, p. 276, et seq., 334. From the time of its enactment it has remained a part of the state's law. It underwent consideration and definition in 1882 in Earl v. Duras, 13 Neb. 234, 13 N.W. 206, 207, in which the court held adequate against a general demurrer a petition assailing a tax against land remaining in an original school district for the equitable adjustment, with a district newly erected out of a part of the former district's area, on account of the general contribution to the cost or value of the earlier district's property remaining to the old district. The court then said:

> "The attorney for the defendant contends that section 144 of the revenue law of 1879 (Comp.Stat. p. 427) prohibits an injunction to restrain the collection of a tax unless it was levied for an unauthorized purpose. Such is undoubtedly the law; but a tax which is levied without authority of law is a tax for an unauthorized purpose; that is, the tax is unauthorized. Where an illegal tax is levied upon real estate, an action at law does not afford an adequate remedy; nor can a court of law grant adequate relief. The tax would remain as an apparent incumbrance upon the property, and would cast a cloud upon the title to the same. This a court of equity may prevent or remove, and quiet the plaintiff's title. * * *"

Again in Bellevue Improvement Co. v. Village of Bellevue, 39 Neb. 876, 58 N.W. 446, following the reasoning in Touzalin v. City of Omaha, 25 Neb. 817, 41 N.W. 796, the court (at a time when its syllabi were of primary significance) said in the syllabus:

> "Where a tax is void,—that is, where there is no tax which the plaintiff is in equity bound to pay,—he may invoke the aid of a court of equity to protect his rights by an injunction, notwithstanding section 144 of the revenue act."

Dealing with a different but comparable section of the state's statute, the court in Morris v. Merrell, 44 Neb. 423, 62 N.W. 865, 866, directed that the collection of a drainage ditch tax be enjoined for invalidating features of the proceedings locating the ditch. In its reasoning it advanced a distinction, obviously valid and in later decisions regarded as applicable to Section 77-1727, R.S.Neb.1943. It is said:

> "Where the assessment is not void, but is simply irregular or erroneous, a court of equity will not interfere by injunction to prevent the collection of such assessment. (Citing cases.) But the rule is otherwise where the assessments are absolutely void for want of jurisdiction or power to impose the same. In such case a party may invoke the aid of a court of equity, notwithstanding the provisions of said section 28."

Within the thought thus suggested Nebraska's supreme court has frequently supported the judicial power of its courts to enjoin the collection of void taxes. Among the opinions reflecting that course are Ives v. Irey, 51 Neb. 136, 70 N.W. 961, invalidating for the fatal omission of notice a sidewalk tax; Chicago Burlington & Quincy R. Co. v. Cass County, 51 Neb. 369, 70 N.W. 955, nullifying a school district tax upon a segment of a railroad bridge, no part of which was located within the district boundaries; Hemple v. City of Hastings, 79 Neb. 723, 113 N.W. 187, affecting a city tax on real estate subdivided into urban lots but not effectively annexed to the city; Rothwell v. County of Knox, 62 Neb. 50, 86 N.W. 903, striking down a tax against the plaintiff as an assumed co-owner upon cattle assessed in a township through which the animals were merely driven in transit, notwithstanding the sole ownership of the cattle by the plaintiff's

---

8. The validity of that hypothesis in the face of the court's conclusion upon the jurisdictional question is found to be neither necessary to, nor appropriate for, its decision.

brother who had his domicile in another township in the same county; Grand Island & Wyoming Central R. Co. v. County of Dawes, 62 Neb. 44, 86 N.W. 934, dealing with a tax in excess of the prescribed mill levy for general fund purposes, to retire old warrants originally issued because of disbursements exceeding the legal maximum; Chicago, Burlington & Quincy R. Co. v. County of Lincoln, 66 Neb. 228, 92 N.W. 208, rejecting a so-called bridge tax designed and used to funnel revenues in excess of the legal limit into the county's general fund; and Union Pacific R. Co. v. Troupe, 99 Neb. 73, 155 N.W. 230, enjoining a tax represented by a school district levy beyond the district's requirements, for the purpose of creating a building fund. It is interesting that the decision in the case last cited was arrived at despite a dissent, based on what is now Section 77–1727, R.S.Neb.1943 upon the ground that the tax, though excessive and irregular, was not "levied or assessed for illegal or unauthorized purpose". The rejection by the majority of the court of that contention finds special emphasis in the circumstance of the dissent.

And both more recent and more directly in point are three cases in each of which the ground of injunction was rooted in the repugnance of the tax to the constitution of the United States. State Bank of Omaha v. Endres, 109 Neb. 753, 192 N.W. 322, an original action, allowed an injunction against the taxation of the shares of a state banking corporation under Section 5887, Comp.St.Neb.1922 on the ground that as applied to the shares of a national banking association the tax at the full mill rate levy applicable to tangible property would be violative of the act of congress forbidding the taxation of such shares at a rate greater than that assessed upon other moneyed capital,[9] and that, in consequence, it was invalid as to state banks by imposing upon them a burden greater than that borne by national banks in competition with them. In Central National Bank v. Sutherland, 113 Neb. 126, 202 N.W. 428, a like tax was enjoined for essentially like reason, as against the shares of stock of (a) a national bank, (b) a state bank, and (c) a trust company. Finally, as recently as 1948, in Best & Co. Inc. v. City of Omaha, 149 Neb. 868, 33 N.W.2d 150, the court reversed a judgment of dismissal of the district court on the sustaining of a general demurrer to a petition for injunction against the enforcement of an occupation tax in the way of a permit or license fee imposed by municipal ordinance on traveling salesmen of nonresident merchants, soliciting, by exhibition of samples, orders subject to home office acceptance and shipment. The basis of the supreme court's ruling was the ordinance's attempted unlawful interference with interstate commerce, and consequent violation of the Constitution of the United States.

It has to be acknowledged that the judicial reasoning in the Nebraska Supreme Court's opinions supportive of the right to injunctive relief in the state's courts against void taxes despite Section 77–1727, R.S. Neb.1943 does not follow a notably consistent pattern. Some of the cases question, and at least by inference deny, the constitutional validity of a statutory barrier to the court's power to enjoin the enforcement of a tax which is manifestly void, e. g. Touzalin v. City of Omaha, supra. Others conveniently fail to mention the statute; and still others, though mentioning it, do not pointedly discuss its impact on the problem before the court, e. g. Best & Co. Inc., v. City of Omaha, supra. Finally, a few squarely declare that a void tax is levied and assessed for an illegal or unauthorized purpose, e. g. Union Pacific R. Co. v. Troupe, supra. But what matters is the uniformity with which the supreme court of the state has vindicated the right to injunction against taxes which are demonstrably void. Confronted with it, this court may not deny the availability to the plaintiff in the courts of the state of the remedy of injunction, provided the factual history warrants its employment.

9. Intangible property, including money, notes receivable, shares of building and loan associations, and many other items, are specially classified and taxed at varying flat rates irrespective of the rates at which tangible property is taxed.

Of the plaintiff's right to proceed in the state courts through quest of a declaratory judgment it is sufficient to observe that provision is made for such relief by Section 25–21,149 to 21,164. Section 25–21,149 generally defines the jurisdiction thus:

"* * * The Supreme Court and courts of general chancery and common law jurisdiction shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."

R.S.Neb.1943, § 25–21,150 provides that:

"Any person * * * whose rights, status or other legal relations are affected by a statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder."

And Section 25–21,153 declares that the enumeration in the section from which quotation has just been made, and two other sections somewhat similarly granting jurisdiction under the Act "does not limit or restrict the * * * general powers conferred in section 25–21,149, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."

On four occasions, although on none of them in a setting precisely identical with this one, the Nebraska court has recognized the applicability of the procedure to questions involving state taxation. Moeller, McPherrin & Judd v. Smith, 127 Neb. 424, 255 N.W. 551; State ex rel. Smrha v. General American Life Insurance Co., 132 Neb. 520, 272 N.W. 555; Thorin v. Burke, 146 Neb. 94, 18 N.W.2d 664; and Miller v. Stolinski, 149 Neb. 679, 32 N.W.2d 199. In the case last cited declaratory relief was not granted because of a want of parties

defendant to the action competent legally to jeopardize the plaintiff's rights, and interested in opposing his position. But even in that case the right to employ the procedure in controversies otherwise properly presented was recognized and asserted even though such controversies involved the validity of taxes. And affirmative relief as against items of state taxation was granted in Moeller, McPherrin & Judd v. Smith, supra; State ex rel. Smrha v. General American Life Insurance Co., supra, and Thorin v. Burke, supra. This court must, therefore, conclude that the remedy of a proceeding to obtain a declaratory judgment in the courts of Nebraska is available to the plaintiff for the vindication of such valid objection as it may assert against the tax complained of.

That each of the two remedies thus held to be available is "plain, speedy and efficient" within the true meaning of Title 28 U.S.C.A. § 1341 is not questioned. But if there be doubt concerning it, this court unhesitatingly affirms the possession by each such remedy of all of those qualities. Discussion of that conclusion would be purpose less and presumptious.

Finally, the defendants contend that by the express provisions of Section 25–1901, R.S.Neb.1943 the district court in Nebraska is given jurisdiction to review on petition in error the action of the state taxing authorities at which the complaint is aimed. The court considers that the jurisdiction suggested validly exists. The cited section of the statute is in the following language:

"A judgment rendered, or final order made, by a county court, justice of the peace or any other tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court."

Subsequent sections of Chapter 25, Article 19 of the Revised Statutes of Nebraska, of which the quoted language is a part, provide the procedural steps by, and the time within, which such review is to be obtained. Their detailed citation and examination seem presently to be unnecessary.

The district court's jurisdiction to review the final action of the administrative boards of the state, or its governmental subdivisions, as distinguished from the judgments and decrees of inferior courts, has been held to extend to orders, of a county or city board of equalization Webster v. City of Lincoln, 50 Neb. 1, 69 N.W. 394, of a county superintendent affecting school district boundaries, Pollock v. School District No. 42, 54 Neb. 171, 74 N.W. 393, of a county board in assessing drainage district benefits, Loup River Public Power District v. Platte County, 135 Neb. 21, 280 N.W. 430, of an equalization board of a metropolitan water district (probably by way of dictum), McCague Investment Co. v. Metropolitan Water District, 101 Neb. 820, 165 N.W. 158, and on a state level, of the board of health revoking a physician's license to practice, Munk v. Frink, 75 Neb. 172, 106 N.W. 425 and Mathews v. Hedlund, 82 Neb. 825, 119 N.W. 17, of the state banking board in the matter of granting or refusing a bank charter, Shumway v. Warrick, 108 Neb. 652, 189 N.W. 301, and State ex rel. v. Morehead, 101 Neb. 37, 161 N.W. 1040, of the State Board of Equalization and Assessment in the assessment of taxes upon railroad property, State ex rel. v. State Board of Equalization and Assessment, 81 Neb. 139, 115 N.W. 789, and of the Department of Trade and Commerce in denial of an investment company's application for a license to do business, Investors Syndicate v. Bryan 113 Neb. 816, 205 N.W. 294. That sampling of the judicial history of the reach of the remedy forbids this court to deny its applicability in the present situation. Nor does the opinion in Mid-Continent Airlines v. State Board of Equalization and Assessment, supra, require such denial. It merely rejected as unallowable in the circumstances a resort to the remedy of appeal under Section 77–510, R.S.Neb.1943, because of the language and context of that section. Neither does Elmen v. State Board of Equalization and Assessment, 120 Neb. 141, 231 N.W. 772,[10] reject the present availability of Section 25–1901, R.S.Neb.1943, whose provisions, though then in force, were not

examined or made a basis of decision in that case.

In the existing situation, especially in view of the manifest availability to the plaintiff of the remedies of injunction and the declaratory judgment procedure, it is regarded as purposeless and probably imprudent at this time to discuss the effect of lapse of time and the plaintiff's failure thus far to resort to the remedy contemplated by Section 25–1901, R.S.Neb.1943.

The court, therefore, concludes that under Title 28 U.S.C.A. § 1341, it may not grant the relief to which the plaintiff invites it, and that in consequence, the plaintiff's complaint and this action should be dismissed for want of jurisdiction. Matthews v. Rodgers, supra; Great Lakes Dredge & Dock Co. v. Huffman, supra. It may be added that, if the problem were one not of jurisdiction but of the exercise of judicial discretion, the court's considered discretion would be exercised in favor of a dismissal without prejudice to enable the plaintiff seasonably, appropriately, and without the conceivable embarrassment of litigation pending here, to proceed in the proper state court.

It is not considered that on this occasion the court should retain jurisdiction but forbear to exercise it while proceedings are had and prosecuted to effect in the state courts. No vulnerability of the statute or tax assailed to any state constitutional provision is asserted. Nor is it believed that any such charge is seriously contemplated or validly exists. The character of the tax itself is in no wise dubious. It is a simple ad valorem tax on physical property. Its apportionment and the manner of its assessment do not alter or discredit that characterization. Accordingly, no circumstances prompt the court to the procedure followed in Spector Motor Co. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101, and Spector Motor Co. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573, and more fully reflected in their related litigation.

An order of dismissal accordingly is being entered.

10. Cited and followed in Mid-Continent Airlines v. State Board of Equalization and Assessment, supra.